BEVERLY B. MANN, Plaintiff-Appellant and Cross-Appellee, v. THE UPJOHN COMPANY, Defendant-Appellee and Cross-Appellant.

First District (3rd Division)    No. 1—98—2343

───────

Opinion filed June 29, 2001.—Rehearing denied August 14, 2001.

Beverly B. Mann, of Chicago, appellant *pro se*.

Johnson & Bell, Ltd., of Chicago (William V. Johnson and Thomas H. Fegan, of counsel), and Shook, Hardy & Bacon, L.L.P., of Kansas City, Missouri

(Stephen E. Scheve, Marie S. Woodbury, and Thomas A. Sheehan, of counsel), for appellee.

JUSTICE BURKE delivered the opinion of the court:

Plaintiff Beverly Mann appeals from numerous orders of the circuit court granting summary judgment to defendant The Upjohn Company on counts I and II of plaintiff's complaint, granting summary judgment to defendant on count IV of plaintiff's amendments to her complaint, granting defendant's motion to dismiss count VII of plaintiff's amendments to her complaint, denying plaintiff's motion to amend her complaint, denying plaintiff's motions for continuance of the trial date, and denying plaintiff's motion to vacate the dismissal of her complaint for want of prosecution (DWP). Defendant cross-appeals from orders of the circuit court granting plaintiff's motion to amend her complaint following summary judgment on counts I and II, denying defendant's motion for summary judgment based on lack of expert testimony on causation, and denying defendant's motion for summary judgment on plaintiff's economic loss claims. For the reasons set forth below, we affirm.

## STATEMENT OF FACTS

Plaintiff, an attorney, filed a *pro se* complaint against defendant alleging that she suffered physical and psychological injuries as a result of her ingestion of a prescription drug, Halcion, from January 1988 to January 1990. Halcion, also known as triazolam, is a member of the benzodiazepine drug class and is a sleep aid used to treat insomnia. Defendant manufactures Halcion and the drug received the Food and Drug Administration's (FDA) approval and licensing in 1982. Numerous complaints similar to plaintiff's were filed against defendant across the country following various news magazine and newspaper articles, as well as a "20/20 Report" detailing adverse side effects of Halcion.

Plaintiff's complaint against defendant was based on claims of negligence (count I) and products liability (count II), and alleged that defendant failed to adequately warn her of the detrimental effects of Halcion. Plaintiff's complaint was subsequently removed to the federal district court based on diversity jurisdiction. Plaintiff was ordered two times by the district court to answer outstanding discovery and to sign medical authorizations. In August 1992, plaintiff voluntarily dismissed her federal complaint, but plaintiff was granted leave to refile it in state court. In October 1992, plaintiff retained an attorney who refiled plaintiff's complaint in the circuit court of Cook County. In addition to the claims against defendant, plaintiff added as defendants Dr. John Karesh, the doctor who prescribed Halcion for her, and NorthCare Medical Group, where Karesh worked, alleging medical malpractice

(count III). In February 1996, the court granted summary judgment in favor of Karesh and NorthCare based on its determination that the claims against them were time-barred by the applicable statute of limitations, and they are not parties to this appeal.

In early 1993, the trial court ordered plaintiff to answer interrogatories on two occasions. In November 1993, defendant filed a motion for sanctions based on plaintiff's failure to comply with discovery. Although the trial court denied the motion for sanctions, the court ordered plaintiff to answer discovery. In the summer or autumn of 1994, defendant filed a motion to compel answers to interrogatories. The trial court's ruling on this motion is not contained in the record.

In May 1996, defendant filed three motions for summary judgment with respect to counts I and II of plaintiff's complaint; one based on lack of evidence of causation, one based on lack of evidence of loss of income claim, and one based on adequacy of warnings. On June 18, plaintiff's attorney was granted leave to withdraw as plaintiff's counsel. During the summer of 1996, defendant filed a motion for relief from plaintiff's personal attacks on counsel. Neither the motion itself, nor the trial court's decision, is in the record.

Plaintiff filed her first motion for a continuance of the trial date on October 22 in order to retain new counsel and to obtain defendant's Halcion database. Plaintiff was ordered on this date to answer Supreme Court Rule 213 interrogatories. 177 Ill. 2d R. 213. Thereafter, the trial court denied plaintiff's motion for continuance. At the hearing on this motion, the court questioned plaintiff about her discovery efforts and expressed its concern with respect to her diligence in prosecuting the case. The court stated that it had serious problems with whether plaintiff had done discovery and advised plaintiff that this was her "last chance." At this hearing, plaintiff accused defense counsel of being notorious for harassing plaintiffs. Plaintiff filed a motion to reconsider, which the trial court granted. The trial was continued from December 9, 1996, to August 21, 1997. Plaintiff was also ordered to answer Rule 213(g) interrogatories by January 3, 1997.

In December 1996, plaintiff replied to defendant's motions for summary judgment, relying on various documentary evidence. In January 1997, defendant filed a motion to bar plaintiff from presenting expert testimony based on her failure to comply with the court's order requiring her to answer Rule 213(g) interrogatories. On February 25, the trial court granted defendant's motion for summary judgment on counts I and II, and on March 25, it denied plaintiff's motion to reconsider its February 25 order granting summary judgment.

On April 22, the trial court granted plaintiff's motion to amend

her complaint, allowing her to add claims for fraud (count IV), negligence (count V), products liability (count VI), and battery (count VII) based on alleged misrepresentations made by defendant. Defendant's subsequent motion to reconsider the order allowing plaintiff to amend her complaint was denied. Defendant thereafter filed a motion to dismiss plaintiff's amendments to her complaint.

On June 18, the trial court granted defendant's motion to require plaintiff to submit to an independent medical examination (IME). This motion had apparently been pending for over a year. On June 20, plaintiff filed a motion to continue the trial date, contending that the case had been in suspension from February 25 (when summary judgment was granted on counts I and II of her complaint) until April 22 (when she was allowed to amend her complaint). In June, plaintiff filed a motion to compel production of the Halcion database, which the trial court subsequently granted on September 23. On July 1, plaintiff filed a motion to continue the trial date to retain counsel, which the trial court denied based on its determination that plaintiff had not been diligent in prosecuting her case and had not demonstrated good cause for a continuance. At the hearing, the court expressed to plaintiff its concern with her discovery efforts over the previous five years. Rather than answer the court's questions with respect to what discovery remained, plaintiff engaged in an outburst and verbally attacked defendant. The court admonished plaintiff that it would not tolerate such conduct. Because of plaintiff's outburst, the court continued the matter to later that day. When the hearing resumed, the court indicated to plaintiff that her case was in jeopardy and that she had not answered Rule 213 interrogatories even though she had been ordered to do so. It then denied plaintiff's motion to continue.

Sometime during the summer of 1997, the FDA commissioned the National Academy of Sciences' Institute of Medicine (IOM) to conduct an independent review of Halcion. On July 9, the trial court granted defendant's motion to dismiss plaintiff's battery claim, but denied its motion to dismiss the negligence, fraud, and products liability claims. On July 10, the trial court granted plaintiff's motion to reconsider its order of June 18, requiring plaintiff to submit to an IME. However, on July 22, the trial court again granted defendant's motion for an IME. Plaintiff's motion to reconsider was denied and she underwent psychiatric and psychological examinations in August 1997. Thereafter, in an emergency motion for an extension of time to file a brief on her motion to compel production, plaintiff accused one of defendant's counsel of faking surgery for the purpose of delay.

On July 23, the trial court continued the trial date from August 21 to October 21, 1997, although the court did question plaintiff as to

what discovery she had done and admonished her to answer the court's questions and cease being unresponsive. The court further indicated that plaintiff was in the position she was in with respect to discovery of defendant's documents due to her "own doings," *e.g.*, her failure to review the documents when they were produced in 1992. The court struck those portions of plaintiff's motion for an extension of time that dealt with attacks upon defense counsel. During the hearing, plaintiff also accused defense counsel of lying to the court both at this hearing and on previous occasions and demanded a transcript of the hearing so she could respond in writing.

On September 13, the trial court entered an order barring plaintiff from presenting any opinion witnesses except those previously disclosed and deposed, *e.g.*, plaintiff's treating physicians. On September 18, plaintiff filed a motion to continue the trial date based on her need to obtain the IOM report as well as defendant's 8,500-patient study of Halcion. On September 23, plaintiff filed another motion to continue the trial date based on the soon-to-be-released IOM report. At a hearing on this date, plaintiff accused defense counsel of lying to the court. The court warned plaintiff that it would censure her and told her there were to be no more attacks in her written memorandum on "how bad" defendant and defense counsel were. Plaintiff was further instructed that she was to cease her accusations that defense counsel was lying. The court advised plaintiff that it would strike her briefs in their entirety if she continued her conduct. On September 29, plaintiff amended her motion to continue. However, the motion was withdrawn based on plaintiff's pending motion to recuse Judge Cox for cause.

On October 3, plaintiff filed an amended motion to continue the trial date based on the forthcoming IOM report. Plaintiff supplemented this motion on October 7, alleging a history of unethical conduct on the part of defendant's attorney, including fabrication of data for defendant. The trial court granted plaintiff's motion to continue based on the recent disclosure by defendant of the IME reports and continued the trial from October 21 to November 4. On October 17, the trial court denied plaintiff's "Motion for Substitution of Judge." On October 24, plaintiff filed an emergency motion to continue the trial date based on the imminent release of the IOM, which the trial court denied. At this hearing, plaintiff again accused defense counsel of making false statements to the court. Plaintiff was admonished about this as well as the fact that what occurred in other Halcion cases in Cook County and the fact that continuances were granted in other cases, as plaintiff argued, were irrelevant because each case was to be considered individually. The trial court also denied plaintiff's

subsequent October 27 motion to continue the trial. On October 30, plaintiff advised defendant that she would not proceed to trial on November 4 and would allow the court to DWP her case.

On November 4, plaintiff renewed her motion to continue the trial date, which the court granted; however, the court noted that plaintiff had done little affirmatively to work up her case, in particular, to disclose witnesses to prove up liability. The court also transferred the case to Judge Zwick for all further proceedings. On November 13, the IOM report was released. On November 20, a status hearing was held at which time trial was set for February 23, 1998, and discovery was cut off as of December 23, 1997. At this hearing, plaintiff again accused defense counsel of making misrepresentations to the court and distorting the truth. Plaintiff demanded that she be allowed to respond in writing. On November 21, plaintiff was allowed to amend her complaint to add punitive damages claims.

Sometime in December, defendant filed a motion for summary judgment on plaintiff's fraud claim, apparently on the basis of preemption by federal law. Defendant also filed a motion for sanctions against plaintiff based on its contention that she violated a protective order entered in the case by sending defendant's Halcion database to an attorney in Texas. On December 27, defendant filed a motion to dismiss plaintiff's amendments to her complaint. On December 31, defendant filed a motion to bar plaintiff's fact witnesses because they were identified after the discovery cut off date, their testimony was not disclosed by plaintiff, or they were opinion witnesses.

In December 1997 or January 1998, plaintiff had apparently arranged for two different attorneys to act as her counsel. However, both counsel later declined to represent plaintiff based on time constraints and the state of the record.

On January 9, 1998, defendant filed another motion for summary judgment on the fraud count, alleging that plaintiff had no evidence to establish reliance by the FDA on any alleged misrepresentations by defendant. On the same day, the trial court denied plaintiff's motion to amend her complaint, concluding that her proposed claims were based on failure to warn, a claim upon which defendant had been previously granted summary judgment.

On January 28, defendant filed a motion to have facts deemed admitted based on plaintiff's failure to answer defendant's request for admissions. On February 13, plaintiff filed an emergency motion to designate an opinion witness on causation, which plaintiff was later allowed to withdraw. On February 19, the trial court granted defendant's motion to bar fact witnesses. On February 23, the trial court continued the trial date to April 23. On March 3, the trial court

denied defendant's motion to dismiss counts IV and V of plaintiff's complaint, but granted defendant's motion for a bill of particulars as to count IV. On March 6, plaintiff moved to supplement her response to one of defendant's motions for summary judgment with the November 13, 1997, IOM report. This request was denied on March 17. On March 27, the trial court granted defendant's motion for summary judgment on plaintiff's fraud count. Plaintiff filed an emergency motion to reconsider the grant of summary judgment to which she attached various documents. The trial court denied plaintiff's motion to reconsider.

On April 21, plaintiff filed an emergency motion to continue the trial date to retain counsel, which the trial court denied. At this hearing, plaintiff accused defense counsel of engaging in tactics to keep her from obtaining the assistance of counsel that she needed, *i.e.*, that defense counsel had persuaded an attorney who had agreed to represent plaintiff from representing her. Plaintiff also accused defense counsel of making substantial misrepresentations to the court. The trial court admonished plaintiff, warning her to stop her repeated interruptions of the proceedings and interruptions when others were talking, and to stop with her outbursts. Plaintiff renewed her motion to continue on April 23, which the trial court again denied. The following colloquy then occurred:

> "MS. MANN: *** I am not prepared to proceed to trial. So I would assume that that means you will enter a dismissal for want of prosecution.
>
> THE COURT: I guess I should make this more formal because I assumed something that was not true. For the record, is the defendant ready to proceed to trial?
>
> MS. WOODBURY [defense counsel]: Yes, your Honor.
>
> MS. SCHEVE [defense counsel]: Yes, your Honor.
>
> THE COURT: For the record, is the plaintiff prepared to proceed to trial?
>
> MS. MANN: No, I am not.
>
> THE COURT: Will you be prepared to proceed to trial any time this afternoon?
>
> MS. MANN: No.
>
> THE COURT: This court then has no other recourse then if the plaintiff is [un]prepared and unwilling to proceed at trial to dismiss the case.
> ***
>
> The case is dismissed for want of prosecution."

Thereafter, the trial court granted defendant's motion for costs. Plaintiff then filed a handwritten motion to vacate the DWP, which the trial court denied, stating it would not vacate an order it had

entered just five minutes previously. On May 8, plaintiff filed a motion to vacate the DWP pursuant to section 2—1301 of the Code of Civil Procedure (735 ILCS 5/2—1301 (West 1998)) and an emergency motion to withdraw the motion to vacate the DWP she had earlier filed. On May 22, plaintiff amended her motion to vacate and, on May 26, she filed a second amended motion to vacate as well as a motion to reconsider the trial court's order denying her motion to continue the trial date. On June 8, the trial court denied plaintiff's motion to vacate the DWP. The next day plaintiff filed a motion to reconsider the June 8 order and, on June 16, she filed an amended motion to reconsider. On June 17, plaintiff filed a corrected amended motion to reconsider, which was denied on June 18. On June 19, plaintiff filed a second amended motion to reconsider the order denying her motion to vacate the DWP and, sometime thereafter, she filed a third amended motion. On June 26, the trial court declined to hear plaintiff's third amended motion to reconsider. Plaintiff filed a notice of appeal on July 1, which she amended on July 7. On July 7, plaintiff again requested that the court hear argument on her third amended motion to reconsider, and the trial court again declined to conduct a hearing on it. On July 14, defendant filed its cross-appeal.

## ANALYSIS

•1 Generally, dismissal of a case for want of prosecution is not a final order which can be appealed since a plaintiff has an absolute right to refile the case within one year of the dismissal. *Wilson v. Evanston Hospital*, 257 Ill. App. 3d 837, 839, 629 N.E.2d 589 (1994). Pursuant to section 13—217 of the Code of Civil Procedure (735 ILCS 5/13—217 (West 1998)), where a plaintiff's action is dismissed for want of prosecution, the plaintiff has the option "to refile the action within one year of the entry of the DWP order or within the remaining period of limitations, whichever is greater." *S.C. Vaughan Oil Co. v. Caldwell, Troutt & Alexander*, 181 Ill. 2d 489, 497, 693 N.E.2d 338 (1998). A "trial court's order denying the vacature of [a] DWP must also be nonfinal and nonappealable since there is an absolute right to refile following that order." *Wilson*, 257 Ill. App. 3d at 840. Similarly, a timely motion to reconsider the denial of a motion to vacate does not transform the DWP into a final and appealable order—this is simply a reaffirmation by the trial court of its earlier decision which in no way affects finality of the DWP. *Wilson*, 257 Ill. App. 3d at 840. Only after the one-year period for refiling has expired does a DWP become final and appealable. *Vaughan*, 181 Ill. 2d at 502. Plaintiffs, however, are only entitled to one refiling of a cause of action under section 13—217 following a voluntary dismissal. *Timberlake v. Illini Hospital*, 175 Ill. 2d 159, 164, 676 N.E.2d 634 (1997).

•2 In the instant case, the general rule with respect to the nonfinality of DWPs is not applicable because after the trial court dismissed plaintiff's case for want of prosecution, plaintiff had no right to refile her cause of action since she had already had her one refiling under section 13—217 when she refiled her complaint in the circuit court in October 1992 following her voluntary dismissal of her complaint in the federal court. See *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 105, 672 N.E.2d 1207 (1996). Accordingly, when the trial court dismissed plaintiff's entire complaint for want of prosecution on April 23, 1998, at plaintiff's voluntary request, and denied her motion to vacate the DWP on June 8, 1998, the dismissal was with prejudice and rendered the DWP order final. See *Danaher v. Knightsbridge Co.*, 56 Ill. App. 3d 977, 980, 372 N.E.2d 862 (1978) (order denying motion to vacate is final and appealable). In addition, because the rights of the parties were ascertained and absolutely fixed at the time the trial court denied the motion to vacate on June 8, the prior court orders granting summary judgment, dismissing count IV of plaintiff's complaint, and denying plaintiff's various requests for continuances, all of which were nonfinal orders that did not contain Rule 304(a) language, then became final orders. It was on June 8 that the litigation was terminated upon the denial of plaintiff's motion to vacate. Thus, all prior orders were subject to appeal and plaintiff's notice of appeal filed on July 1, 1998, was timely.

Because plaintiff's entire cause of action was dismissed for want of prosecution, the sole issue before this court is whether the trial court properly exercised its discretion in denying plaintiff's motion to vacate the dismissal of her complaint for want of prosecution. If the trial court did not abuse its discretion in denying the motion to vacate, the remaining issues raised by plaintiff are rendered moot since the DWP order disposed of the entire cause of action.

Plaintiff contends that the trial court abused its discretion in denying her motions to vacate the DWP order by failing to consider the requisite criteria pursuant to section 2—1301 of the Code of Civil Procedure. According to plaintiff, a review of the transcripts of proceedings demonstrates that the trial court failed to analyze or state findings upon the required criteria for vacating an order. It is her contention that the overriding criterion is whether substantial justice was done and that section 2—1301, unlike section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 1998)), forbids consideration of due diligence. Plaintiff claims that the only thing she could do was let the trial court dismiss her case because she could not have proceeded to trial *pro se*. She contends that she prosecuted her case to the fullest extent of her abilities.

●3 Pursuant to section 2—1301 of the Code of Civil Procedure, "[t]he court may *** on motion filed within 30 days after entry thereof set aside any final order or judgment upon any terms and conditions that shall be reasonable." 735 ILCS 5/2—1301 (West 1998). The plaintiff, as the moving party, has the burden of establishing sufficient grounds for vacating the judgment. *In re Marriage of Ward*, 282 Ill. App. 3d 423, 432, 668 N.E.2d 149 (1996). "The primary concern in ruling on a motion to vacate is whether substantial justice is being done between the litigants and whether it is reasonable under the circumstances to proceed to trial on the merits." *Marren Builders, Inc. v. Lampert*, 307 Ill. App. 3d 937, 941, 719 N.E.2d 117 (1999). However, the court may also consider whether a meritorious defense exists, due diligence, the severity of the penalty as a result of the judgment, and the hardship to the nonmovant if required to proceed to trial. *Marren Builders*, 307 Ill. App. 3d at 941-42. The trial court should consider all events leading up to the judgment. *Marren Builders*, 307 Ill. App. 3d at 943. " ' "What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome." ' " *Merchants Bank v. Roberts*, 292 Ill. App. 3d 925, 932, 686 N.E.2d 1202 (1997), quoting *Venzor v. Carmen's Pizza Corp.*, 235 Ill. App. 3d 1053, 1058 (1992), quoting *Widicus v. Southwestern Electric Cooperative, Inc.*, 26 Ill. App. 2d 102, 109, 167 N.E.2d 799 (1960). The guiding principle is to prevent dismissal when it would be unfair, unjust, and inequitable. *Kirk v. Michael Reese Hospital & Medical Center*, 275 Ill. App. 3d 170, 173, 655 N.E.2d 933 (1995).

●4 "The decision to grant or deny a motion to vacate *** lies within the sound discretion of the trial court, and we will reverse only if the trial court abused its discretion." *Marren Builders*, 307 Ill. App. 3d at 941. A trial court abuses its discretion "when it acts arbitrarily without the employment of conscientious judgment or if its decision exceeds the bounds of reason and ignores principles of law such that substantial prejudice has resulted." *Marren Builders*, 307 Ill. App. 3d at 941. "If reasonable persons could differ as to the propriety of the trial court's actions, then the trial court cannot be said to have exceeded its discretion." *Merchants Bank*, 292 Ill. App. 3d at 930.

●5 In the instant case, we find that while dismissal is a severe penalty, under the circumstances of this case, existing from the beginning of the litigation, dismissal was a fair and just result, which did not deny plaintiff substantial justice. The record clearly reflects a lack of due diligence on the part of plaintiff, a complete refusal to follow established litigation procedures, and that plaintiff was certainly on notice as early as 1996 that her case was in jeopardy. From very early

on, plaintiff refused to cooperate with discovery. She refused to answer interrogatories and requests for production of documents, she refused to sign medical authorizations although ordered to do so at least twice by the federal district court, and she refused to provide her medical information and records to defendant even though such information was crucial to the issues in the case. Defendant was forced to bring several motions to compel as well as motions for sanctions against plaintiff based on her refusal to cooperate with discovery. In fact, plaintiff was ultimately barred from presenting any opinion witnesses except for her own treating physicians because of her refusal to answer Rule 213 interrogatories.

Plaintiff's refusal to follow established procedures for presenting, preparing, and trying her case also supports the trial court's decision. Plaintiff advised the court several times that it was her intent to have the case litigated in a manner that was different than most products liability cases were litigated. Plaintiff repeatedly refused to answer the trial court's questions during oral arguments. Plaintiff ignored the court's comments from early on that it was concerned with what efforts she was taking to move the case forward and that her position was in jeopardy. As early as October 1996, the trial court questioned plaintiff's diligence and discovery efforts. Such questioning was continued throughout the case by the various judges hearing plaintiff's motions when they expressed their concerns with her discovery efforts and manner of prosecution of her case. The judges' comments at the various hearings clearly made their concerns known to plaintiff with respect to the adequacy of her evidence and discovery efforts. Additionally, although the trial court attempted to apprise plaintiff of the procedures she needed to follow, plaintiff did not follow its suggestions and continued to argue to the trial court that she intended to try this case differently than other cases.

The numerous continuances and delays occasioned by plaintiff's conduct provide additional support for the trial court's decision. Although several of plaintiff's motions for continuances were based on her request to obtain counsel, we note that plaintiff herself chose to proceed *pro se* to protect her own interests and privacy. While we are not saying that plaintiff was not entitled to have counsel represent her, she voluntarily made the decision to initially proceed *pro se* and the case should not be further delayed in light of her insistence that she proceed *pro se*. See *Clewell v. The Upjohn Co.*, No. 94—2383 (E.D. Pa. November 21, 1995).

Lastly, we find plaintiff's repeated attacks upon defendant's counsel, both during oral argument and in her written documents before the trial court, very disturbing. Plaintiff was advised by the

trial court that her conduct was improper and she was admonished on numerous occasions to cease her conduct. Plaintiff ignored the court's admonishments and continued her attacks upon defense counsel. We also admonish plaintiff that such conduct was improper, as well as inexcusable.

In summary, the record in this case discloses a lack of cooperation by the plaintiff in obeying court orders, indifference to the trial court's advice and admonishments, repeated attempts to delay the proceedings, and a failure to follow the rules of proper procedure. Plaintiff was the architect of her own predicament, and her complaint now that she was denied substantial justice will not be heard by this court. *Francone v. Weigel Broadcasting Co.*, 79 Ill. App. 3d 991, 993, 398 N.E.2d 1114 (1979). The trial court indulged plaintiff and gave her many opportunities to proceed with her case, yet plaintiff did not avail herself of the court's indulgence. This case has lingered in the circuit court for six years and, after all the delays, refusals, and lack of cooperation by plaintiff, it would not be reasonable to force defendant to proceed to trial. The trial court's decision to deny plaintiff's motion to vacate its DWP order was reasonably made to prevent further delays and expenses and to reach an end to this litigation. We conclude that substantial justice was done and that the trial court did not abuse its discretion in denying plaintiff's motion to vacate the DWP order. Because the trial court did not abuse its discretion and because all claims were dismissed by the court's DWP order, the remaining issues raised in this appeal are moot, as are those raised in defendant's cross-appeal.

## CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

HALL, P.J., and WOLFSON, J., concur.