**In the matter of: Beverly B. MANN, Respondent.**

No. D–02–0005.

United States Court of Appeals, Seventh Circuit.

Heard Oct. 16, 2002.

Decided Nov. 1, 2002.

Before EASTERBROOK, KANNE, and WILLIAMS, Circuit Judges.

EASTERBROOK, Circuit Judge.

Earlier this year we directed attorney Beverly Mann to show cause "why she should remain a member of this court's bar with unpaid sanctions entered against her. See Fed. R. App. P. 46(b)(1)(B)." She filed a written response and asked for a hearing, as was her right under Rule 46(c). That hearing has been held, and the matter is ready for decision.

■ What led to the court's order is Mann's refusal to pay financial sanctions entered under 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying the proceedings in an earlier case. Those orders, previously unpublished under Circuit Rule 53, are attached as appendices to this opinion so that the reader may understand the background.

■ Mann defends on the theory that our award of sanctions was erroneous, which in her view excuses any need to comply. She tells us that she plans to wage a collateral attack on our orders sometime in the future, in some other circuit. How there could be either jurisdiction or venue for such a challenge Mann does not explain. But whether or not the orders are subject to collateral attack, the fact remains that they are still in force. Even orders entered *ex parte* must be obeyed while they remain outstanding, no matter how erroneous the addressee believes them to be. See, e.g., *Pasadena City Board of Education v. Spangler,* 427 U.S. 424, 438–40, 96 S.Ct. 2697, 49 L.Ed.2d 599 (1976). It is unthinkable that a lawyer who claims a privilege to disregard any final decision with which she does not agree could remain in good standing at the bar. Such a lawyer would be a hazard to clients and to herself, as well as to the courts. Half of all litigants (the losing half) may believe that the decision is incorrect, but it is essential to the operation of any legal system that unsuccessful litigants abide by the judgment unless they can persuade a higher court to set it aside. See *Homola v. McNamara,* 59 F.3d 647 (7th Cir.1995).

At the hearing under Rule 46(c) Mann did not advance any extenuating circumstance (such as financial difficulties) or any legal reason why a lawyer who claims a right to disregard judgments should remain in good standing. This court recognizes that some of our decisions are incorrect—nomination by the President and confirmation by the Senate do not confer infallibility—but *whether* a given order is mistaken must be resolved through the legal process (petitions for rehearing or certiorari) rather than by the unsuccessful litigant's unilateral action. The Supreme Court denied Mann's petition for certiorari to review our decision. See 534 U.S. 1131, 122 S.Ct. 1072, 151 L.Ed.2d 974 (2002).

The underlying litigation is over. Only compliance remains—but it has not been forthcoming.

 Mann contended in her written response that the first amendment precludes any sanctions for misconduct during litigation. The problem, however, is what occurred *after* the litigation—obdurate refusal to comply with the final decision. Defiance of a judicial order is not a "petition [to] the Government for a redress of grievances" protected by the first amendment. See *Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, 19 (1958). Objecting to the sanction itself is a form of collateral attack that we will not entertain. At all events, *BE & K Construction Co. v. NLRB*, —— U.S. ——, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002), the decision on which Mann principally relies, does not establish that using § 1927 to shift attorneys' fees violates the Constitution. The Court made this clear: "[N]othing in our holding today should be read to question the validity of common litigation sanctions imposed by the courts themselves . . . or the validity of statutory provisions that merely authorize the imposition of attorney's fees on a losing plaintiff." —— U.S. at ——, 122 S.Ct. at 2402. See also, e.g., *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

 Her further argument that Rule 46 is unconstitutionally vague fares no better. True enough, Rule 46 adopts for the courts of appeals an open-ended standard of lawyers' deportment rather than a list of disciplinary rules, as all states and many district courts have done. According to Rule 46(b)(1)(B), a lawyer who "is guilty of conduct unbecoming a member of the court's bar" may be disciplined or disbarred. As far as we can tell, this provision has been challenged on due process grounds only once before, and *In re Bithoney*, 486 F.2d 319 (1st Cir.1973), held that it gives lawyers adequate notice. Less than a year later, the Supreme Court came to the same conclusion with respect to Article 133 of the Uniform Code of Military Justice, which makes it a crime for a commissioned officer to engage in "conduct unbecoming an officer and a gentleman." See *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). *Bithoney* and *Parker* observed that long traditions and compiled rules of the legal and military professions flesh out the elliptical "conduct unbecoming" standard. See also *In re Snyder*, 472 U.S. 634, 645, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985). We agree with and follow *Bithoney* today.

 Given the collateral-bar rule discussed in *Spangler* and the holding of *Cooper*, no reasonable lawyer could believe herself entitled to disregard judicial decisions that bind her *in personam*—even decisions that the lawyer sincerely believes to be erroneous. See also Ill. R. Prof. Conduct § 8.4(a)(5) ("A lawyer shall not . . . engage in conduct that is prejudicial to the administration of justice."). A lawyer may advise a client to disobey a judicial order when that step is essential to secure appellate review, see *Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975), but once the judicial process has run its course the order must be implemented. *Chambers* and *Roadway Express* depict lawyers' flouting judicial orders as the paradigm of sanctionable conduct. Mann thus had notice of what was expected. She could have avoided discipline by complying with the decision even after we issued the order to show cause, but she has steadfastly refused to do this. Now she must accept the consequence of her choices.

Beverly Mann is removed from the roll of attorneys authorized to practice in this court.

## Appendix A

United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

Submitted August 15, 2001 *

Decided August 31, 2001

Before

**Hon.** Frank H. Easterbrook, Circuit Judge .

**Hon.** Daniel A. Manion, Circuit Judge

**Hon.** Michael S. Kanne, Circuit Judge

Beverly B. Mann, *Plaintiff-Appellant,*

v.

Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois, and Cook County, Illinois, *Defendants-Appellees.*

Nos. 99–1750 & 99–3595

Appeals from the United States District Court for the Northern District of Illinois, Eastern Division.

No. 98 C 8004

Harry D. Leinenweber, *Judge.*

## Order

This is the culmination of an absurd, and absurdly protracted, effort by a lawyer who filed a tort suit in state court to litigate particular issues in federal court. Beverly Mann filed a products-liability suit against Upjohn Company. After dismissing that suit in 1992 to avoid the judge's order that she submit to discovery, Mann

filed again in 1993, and again failed to provide information in discovery despite judicial orders requiring her to do so. Mann took the position that she alone would decide what information Upjohn received. Ensuing sanctions hampered her ability to present evidence at trial. Mann turned to federal court, asking for an order compelling the state court to grant a continuance. That quest was unavailing. When the case was called for trial in April 1998, Mann, a member of the bar representing herself, refused to proceed. The judge dismissed the suit for want of prosecution, and Mann appealed. Under 705 ILCS 105/27.2a(k)(4) she had to pay a record-preparation fee of $150 plus 25¢ for each page over 200. This was no more acceptable to Mann than the discovery rulings had been. She was willing to pay $150 for preparing the whole record (which weighed in at over 6,000 pages) but no more.

Supreme Court Rule 298 provides for full or partial waiver of the fee for those who are unable to pay it. Mann, who concedes ability to pay, contends only that paying the fee would be a "hardship." Abjuring the means provided by state law for relief, Mann asked the judge in the state case to declare § 105/27.2a(k)(4) unconstitutional as a violation of the equal protection clause in the fourteenth amendment and as a "hidden tax" in violation of the state's constitution, Art. I § 12 of which provides for access to the courts. This provision reads: "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly." Mann's theory is that the charge exceeds the cost of prepar-

---

* After an examination of the briefs and the records, we have concluded that oral argument is unnecessary, and the appeals are submitted for decision. See Fed. R. App. P. 34(a); Cir. R. 34(f).

ing the record, is deposited in the county treasury, and thus is a "tax" on litigation that abridges the right of access.

After the trial judge denied Mann's request for relief, she did not appeal within the state system. Instead she filed a federal suit (No. 98 C 6078) under 42 U.S.C. § 1983, making the same constitutional arguments that had been presented to the state trial judge. This was dismissed under the *Rooker–Feldman* doctrine after the district judge concluded that it was just a (poorly) disguised attack on the decision of the state trial judge. See *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Mann's next step was to file an original action in the Supreme Court of Illinois—seeking to invoke not Rule 298 (a request that should have been addressed to the trial or appellate courts) but Supreme Court Rule 381, which deals with challenges to revenue statutes. That court promptly denied Mann's request for leave to commence an original action. Mann also presented a new request to the trial judge in the products-liability case. That judge made it clear that the earlier decision had been, not on the merits, but procedural: The judge viewed Mann's motion as an inappropriate effort to convert the products-liability case into some new constitutional claim.

Mann could have appealed that decision within the state's hierarchy but did not. Instead she returned to federal court, first by filing a Rule 60(b) motion in No. 98 C 6078 and, after that failed, by commencing a new federal suit, which was docketed as No. 98 C 8004. (She did not appeal the final decision in No. 98 C 6078.) In this new proceeding—Mann's third federal suit arising out of a single state action—Mann demanded an injunction, a writ of prohibition, and other relief against the state's implementation of § 105/27.2a(k)(4). This suit could have been dismissed on preclusion grounds; a disappointed litigant must appeal rather than file another suit, even if developments after entry of the first judgment show that the decision was incorrect. See *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). But the defendants did not invoke the law of claim preclusion (res judicata). Instead they defended on the merits. The district judge concluded that the state judge's explanation lifted the *Rooker–Feldman* doctrine. Now, the federal judge believed, Mann was attacking § 105/27.2a(k)(4) itself rather than the state court's decision. (This is a doubtful proposition; Mann's only grievance is the state judicial system's application of § 105/27.2a(k)(4) to her appeal. But just as the Supreme Court avoided the *Rooker–Feldman* issue in *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), we need not consider it here.) Nonetheless, this did Mann no good, because the district judge concluded that she is very unlikely to prevail on the merits and declined to afford interlocutory equitable relief. 1999 WL 135305, 1999 U.S. Dist. LEXIS 2804 (N.D.Ill. Mar. 2, 1999). Mann's appeal from this decision has been docketed as No. 99–1750.

While that appeal was being briefed, the district court dismissed Mann's complaint on the merits. 1999 U.S. Dist. LEXIS 13426 (N.D.Ill. Aug. 3, 1999). The court ruled that a fee for record preparation in an ordinary civil lawsuit is not subject to the special rules for criminal litigation by indigents, exemplified by cases such as *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), but is more like the filing fee in bankruptcy, see *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631,

34 L.Ed.2d 626 (1973). The Supreme Court held in *Kras* that a filing fee for bankruptcy is not unconstitutional even if set so high that some people cannot afford it; and if one can be too poor to go bankrupt, the district judge concluded, there is no possible constitutional objection to a fee in litigation that imposes a "hardship" on one who is able to pay. Mann's appeal from this decision has been docketed as No. 99–3595. Meanwhile the state appeal proceeded, and the judgment dismissing the suit has been affirmed. *Mann v. Upjohn Co.*, [324 Ill.App.3d 367, 753 N.E.2d 452,] 2001 Ill.App. LEXIS 531 (1st Dist. June 29, 2001) [cert. denied, —— U.S. ——, 122 S.Ct. 2358, 153 L.Ed.2d 180 (2002) ]. Either Mann paid the fee under protest or the state court decided to overlook the nonpayment. In neither event is the federal case moot. If Mann paid, she could get the money back if she were to prevail; and if Mann did not pay, the state may dun her for the money, or the lack of payment may impede review by the Supreme Court of Illinois (or future appeals Mann may pursue, for she is a frequent filer).

Defendants contend that the district court's judgment on the merits moots appeal No. 99–1750. For her part, Mann insists that the district court lacked jurisdiction to adjudicate the merits while No. 99–1750 was pending. Mann's position is incorrect. Although an appeal usually deprives the district court of jurisdiction to proceed, an appeal under 28 U.S.C. § 1292(a)(1) from the denial of an interlocutory injunction is an exception to that norm. See *Thomas v. Board of Education*, 607 F.2d 1043 (2d Cir.1979); *Abramson v. University of Hawaii*, 594 F.2d 202 (9th Cir.1979). So No. 99–1750 no longer matters, and that appeal is dismissed as moot. (Because the final judgment automatically supersedes the denial of interlocutory relief, it is unnecessary to vacate the earlier decision under *United States v. Munsingwear, Inc.*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950).)

As for No. 99–3595: We decline the parties' request to reach the merits. This case has no business being in federal court and should have been dismissed immediately after its filing. One reason is the Tax Injunction Act, 28 U.S.C. § 1341. Mann characterizes the charge as a "tax," and if that is correct then § 1341 bars any federal interference if a plain and speedy remedy is available in state court. Supreme Court Rule 298 offers one such remedy; asking the state's court of appeals for relief from the charge is another. Mann pursued neither. If, however, the charge is not a "tax" (and it hardly seems like one; Mann does not contend that the congeries of fees charged to litigants, including all filing and record-preparation charges, is a net money-raiser for the state after all expenses of running the judicial system have been accounted for) then § 1341 does not apply—but much of Mann's substantive argument is sunk. So far as the federal Constitution is concerned, it makes no difference whether fees go into the state (or county) treasury, which then underwrites the judicial system, or instead are deposited into a separate fund under the control of the courts.

Whether the fee is a "tax" does not matter in the end, however, because the district court should have abstained. This suit is a replay of *Pennzoil*, in which Texaco, having suffered a large judgment at trial in a state court, asked a federal court for relief against the bond that state law required as a condition of appeal. Texaco contended that the bond would serve as an *absolute* bar to appeal under the circumstances, a more grievous injury than the "hardship" of which Mann complains, and

the source of a better constitutional argument. See *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972). Still, the Supreme Court held, it would be inappropriate for a federal tribunal to interfere with ongoing state litigation. See, e.g., *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); 28 U.S.C. § 2283. Texaco had to present its constitutional arguments to the state judiciary, with the option to seek review in the Supreme Court under 28 U.S.C. § 1257. Mann should have proceeded in the same way. After the state's trial judge rejected her contention, she should have sought review within the state system and then, if necessary, by the Supreme Court of the United States. Instead she bolted to federal district court, which under *Pennzoil* can offer no relief.

Defendants have not sought abstention under *Younger* and *Pennzoil,* but federal courts are entitled to abstain on their own—not only to protect states from errors by their lawyers (the State's Attorney of Cook County, representing the defendants in this case, may not have the interests of the whole State at heart), and to avoid unnecessary decisions on constitutional questions, but also to protect themselves from impositions of the kind that Mann has perpetrated. See *Mazanec v. North Judson–San Pierre School Corp.,* 763 F.2d 845 (7th Cir.1985). Mann contends that the fee violates the Constitution of Illinois as well as the Constitution of the United States. That argument, presented to a state court, could have avoided any need for federal decision, even by the Supreme Court on certiorari under § 1257. Moreover, the fact that the appeal in the state case has concluded does not lift the abstention doctrine; one may not avoid a state forum by waiting until its process has

concluded. See *Nelson v. Murphy,* 44 F.3d 497 (7th Cir.1995).

These proceedings not only imposed on the federal courts (and the defendants) but also appear to come within the scope of 28 U.S.C. § 1927:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Mann, an attorney, has multiplied these proceedings unreasonably and, in an objective sense, vexatiously. See *In re TCI Ltd.,* 769 F.2d 441 (7th Cir.1985). The tort suit was filed, dismissed, refiled, and lasted for five more years before it was dismissed, on the date set for trial, because Mann refused to participate. Proceedings were marred by Mann's failure to follow judicial orders concerning discovery and by her generally inappropriate conduct. The state's appellate court rebuked Mann for "inexcusable" abuse of opposing counsel as well as "lack of cooperation ... in obeying court orders, indifference to the trial court's advice and admonishments, repeated attempts to delay the proceedings, and a failure to follow the rules of proper procedure." The state portion of this litigation included, in addition to the main case (filed twice and unduly dragged out) and the original action in the Supreme Court of Illinois, repeated efforts to disqualify a judge. The federal portion has included the three suits we have mentioned plus additional motions to disqualify, requests for sanctions (Mann's motions were denied and she was ordered to pay $100 to the defendants under Fed.R.Civ.P. 11), and the two appeals from No. 98 C 8004 plus post-judgment motions practice

in No. 98 C 6078. One suit has been turned into six, each characterized by needless contretemps.

We therefore direct Mann to show cause, if any she has, why she should not be ordered "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." We limit this order to costs and expenses the defendants have incurred in the federal portion of the litigation. Mann may file her response within 14 days. Within the same time, defendants should file with the court an estimate of the total expenses they have incurred in both the district court and this court. This should include an estimate of the market value of the services provided by their in-house legal staffs. See *Central States Pension Fund v. Central Cartage Co.*, 76 F.3d 114 (7th Cir.1996).

Appeal No. 99–1750 is dismissed as moot. On appeal No. 99–3595, the judgment of the district court is vacated, and the case is remanded with instructions to abstain. An order to show cause will be entered, returnable within 14 days.

Appendix B

United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

September 19, 2001

Before

**Hon.** Frank H. Easterbrook, Circuit Judge

**Hon.** Daniel A. Manion, Circuit Judge

**Hon.** Michael S. Kanne, Circuit Judge

Beverly B. Mann, *Plaintiff-Appellant,*

v.

Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois, and Cook County, Illinois, *Defendants-Appellees.*

Nos. 99–1750 & 99–3595

Appeals from the United States District Court for the Northern District of Illinois, Eastern Division.

No. 98 C 8004

Harry D. Leinenweber, *Judge.*

### Order

The response to our order to show cause spends a great deal of time expressing dissatisfaction with the rulings of both state and federal courts in this case, but it does very little to justify the filing of three federal lawsuits seeking review of decisions made in, or matters affecting, a products-liability case ongoing in state court. To the extent the response offers explanations (such as ignorance of *Pennzoil* and the Tax Injunction Act), these are not justifications. Counsel is obliged to research the law before filing suits. We therefore conclude, for reasons narrated in our order of August 31, 2001, that attorney Mann has multiplied the litigation unreasonably and vexatiously, and must personally pay the costs and legal fees that resulted.

The statement of costs and fees submitted by the defendants is modest. They seek compensation for only 28 hours of legal work, which covers proceedings in both the district court and this court. The hourly fee requested, $185, is appropriate to practice in Chicago.

Accordingly, and on the authority of 28 U.S.C. § 1927, Beverly Mann is ordered to pay $5,180.00 to the Office of the State's Attorney of Cook County. This amount must be paid within 14 days, and proof of

payment must be filed with the clerk of this court.

