NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0656n.06

No. 08-4062

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Sep 23, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| FRED DEVER, BOBBIE DEVER, AMERICAN POWDER COATING AND MANUFACTURING COMPANY, INC., | ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| GENE KELLY, Clark County Sheriff; TERRY REED, DUSTIN CRAMBLETT, BRADLEY TILLMAN, GLENN CLARK, | ) ) ) ) ) | |
| Defendants-Appellees. | ) | |

Before: KEITH, GIBBONS, and KETHLEDGE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiffs-appellants Fred Dever, Bobbie Dever, and American Powder Coating and Manufacturing Company, Inc. ("APC") appeal from the grant of summary judgment in favor of defendants-appellees Sheriff Gene Kelly, Sergeant Terry Reed, Deputy Dustin Cramblett, Deputy Bradley Tillman (collectively, "Sheriff Defendants") and Glenn Clark. The plaintiffs filed this 42 U.S.C. § 1983 action in the United States District Court for the Southern District of Ohio alleging a violation of their Fourth Amendment right to be free from unreasonable search and seizure, violation of their Fourteenth Amendment right to procedural and substantive due process, and state law claims of conversion and trespass. The district court granted summary judgment for the defendants on all claims. For the reasons that follow, we affirm the

judgment of the district court.

I.

This case arises out of a business relationship between the Devers and Clark that dissolved. The Devers, husband and wife, operated APC from 1992 to 2005. In 2004, the Devers hired Clark so that he might learn the business and eventually purchase it from them. Negotiations for the sale of APC began in May of 2005. Although the parties had not yet agreed to the terms of sale, Clark assumed operation of APC on July 1, 2005. Clark managed the company from July to October of 2005. However, the parties never reached agreement on the details of the sale, and on October 1, 2005, the Devers decided to take control of APC away from Clark. Fred called the sheriff's office for assistance in removing Clark, but the deputies declined to intervene absent a court order. Fred proceeded to change the locks, effectively barring Clark from entering APC. Clark attempted to return a few times, and on one occasion an APC employee again called the sheriff's office. The Devers filed an action for declaratory judgment against Clark in the Court of Common Pleas of Clark County, Ohio. In response, Clark filed a motion seeking an injunction against the Devers allowing him to continue to operate the business.

After an evidentiary hearing, the Court of Common Pleas issued a preliminary injunction against the Devers. The court found that there was a reasonable probability that Clark would succeed in enforcing the sale of APC on a theory of promissory estoppel because Clark had operated APC from July 1 to October 1, 2005; that Clark would suffer irreparable injury to his livelihood and business reputation if an injunction did not issue; and that the public interest weighed in favor of the continued operation of APC by Clark. Accordingly, on December 7, 2005, the court issued a

2

preliminary injunction ordering that:

1.      [The Devers] are prohibited from interfering with [Clark's] quiet enjoyment of the subject business and real estate;

2.      [The Devers] provide defendant Glenn Clark with keys to all locks in all buildings located on the subject real estate;

3.      [The Devers] not enter upon the subject real estate until resolution of this case unless express consent is given by Glenn Clark;

4.      [The Devers] cease collection of accounts receivable and turn over to [Clark] any money collected on invoices issued after July 1, 2005.

The court denied the Devers' motions to stay the preliminary injunction and to require Clark to post a bond. The Devers refused to comply with the preliminary injunction and filed a notice of appeal on December 12, 2005.

The following morning at 5:30 a.m., Clark called the Clark County Sheriff's Office for assistance enforcing the preliminary injunction. Deputies Reed, Tillman, and Cramblett met Clark a short distance from APC, and all four men arrived at the business at 6:10 a.m. According to Fred's affidavit and deposition testimony, he was already at work inside the building. The deputies knocked on the shop door, which Fred unlocked and opened. Fred then led the deputies down the hall to his office. Reed "threw" a copy of the preliminary injunction on Fred's desk and stated that it gave possession of APC to Clark. Fred responded that he and his wife, Bobbie, owned APC and that they had filed a motion for a stay and an appeal, both of which were pending. Fred attempted to show the deputies court documents to this effect, but the deputies refused to read them. Reed then threatened to arrest Fred if he did not comply with the court order. Fred called his lawyer, but the deputies declined to speak with his counsel. Reed testified that he eventually became frustrated with

3

what he perceived as Fred's stalling and "probably" told Fred, "get your shit and get out." According to Fred, he began to pack up certain items he claimed were his personal property. Clark, however, disputed that the items belonged to Fred, and the deputies ordered Fred to leave some of the items behind. Finally, Fred, escorted by Tillman, left the premises in the early morning of December 13, 2005.

Meanwhile, the Court of Appeals of Ohio set an expedited briefing schedule and issued a stay of the preliminary injunction on December 22, 2005. The next day, the Devers sought the sheriff's help in enforcing the stay, but they assert that the sheriff's office declined to intervene. Also on December 23, 2005, Clark filed a bankruptcy petition on behalf of APC, which automatically stayed the stay issued in the state court litigation. Believing that Clark filed the petition in order to avoid complying with the stay issued by the state appellate court, the Devers filed a motion to dismiss the bankruptcy petition, which the bankruptcy court granted. The dismissal of the bankruptcy case lifted the stay in the Clark County litigation, and the Devers regained control of APC on January 26, 2006.[1] However, there was little left of the business by that time.[2]

On December 12, 2006, the Devers filed the instant case against Clark and the Sheriff

---

[1]Following the dismissal of the bankruptcy case, the Devers filed a civil action against Clark in the Court of Common Pleas of Delaware County, Ohio, alleging malicious prosecution, abuse of process, and frivolous conduct based on Clark's filing of the bankruptcy petition. The Delaware County court dismissed the complaint for failure to state a claim upon which relief could be granted.

[2]Because APC was operating at a loss, the Devers soon filed a motion seeking the court's permission to cease operation. Clark did not oppose the motion. The trial court granted the motion and terminated the preliminary injunction on May 26, 2006. The Devers assert in their brief that they subsequently obtained judgment against Clark in the Clark County litigation, but they have not provided record evidence of any judgment. In any event, the outcome of the Clark County litigation is irrelevant to our disposition of the Devers' constitutional claims.

Defendants alleging a violation of their Fourth Amendment right to be free from unreasonable search and seizure, violation of their Fourteenth Amendment right to procedural and substantive due process, and state law claims of conversion and trespass, and seeking actual damages in excess of $810,764 and punitive damages. Chief United States Magistrate Judge Michael R. Merz recommended that the district court grant summary judgment to all defendants, and the district court adopted the magistrate's report and recommendation in full. *See Dever v. Kelly*, 566 F. Supp. 2d 703, 705 (S.D. Ohio 2008). This timely appeal followed.

II.

We review *de novo* the district court's grant of summary judgment. *See Sullivan v. Or. Ford, Inc.*, 559 F.3d 594, 594 (6th Cir. 2009). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Northup Props., Inc. v. Chesapeake Appalachia, L.L.C.*, 567 F.3d 767, 771 (6th Cir. 2009). In reviewing the evidence, we must draw all reasonable inferences in favor of the nonmoving party. *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002).

A.

To establish a claim for relief under 42 U.S.C. § 1983, the Devers must show that (1) the defendants acted under color of state law and (2) the defendants' conduct deprived them of rights secured by federal law. *See League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 475 (6th Cir. 2008). The Sheriff Defendants do not dispute the first element–that they were acting under color of state law. As for Clark, the Devers allege that Clark's actions were so entwined with those of the

5

Sheriff Defendants that Clark–a private individual–acted under color of state law. *See Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 176 (6th Cir. 2008). Clark, who is representing himself, has not responded to this allegation. We need not address the question because, as shown below, the Devers have not established the second element–a violation of their constitutional rights.

1.

The Devers first allege that the defendants' warrantless entry into APC violated their Fourth Amendment right to be free from unreasonable search. Before we can decide whether a search is unreasonable, we must determine whether a "search" occurred. A "search" occurred within the meaning of the Fourth Amendment only if the Devers had a legitimate expectation of privacy in the APC premises on December 13, 2005. *See United States v. Dillard*, 438 F.3d 675, 682 (6th Cir. 2006) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)). Factors to consider include (1) the Devers' possessory interest in APC; (2) whether the Devers had the right to exclude others from APC; (3) whether the Devers took normal precautions to maintain their privacy in the premises; (4) whether the Devers exhibited a subjective expectation that APC would remain free from intrusion by the Sheriff's Office; and (4) whether Fred Dever was legitimately on the premises. *See United States v. King*, 227 F.3d 732, 744 (6th Cir. 2000).[3]

Here, possessory rights to APC and the building that housed it were hotly contested in December of 2005. The state trial court issued a preliminary injunction giving possessory rights to Clark on December 7. The Devers took an interlocutory appeal on December 12, but the state

---

[3]The Devers' argument that the Sheriff Defendants acted contrary to state law and the Sheriff's General Order 74.2 by enforcing a civil entry is misplaced. As shown above, the relevant inquiry focuses on the actions of the Devers, not the Sheriff Defendants.

appellate court did not stay the preliminary injunction until December 22. Therefore, on December 13, the preliminary injunction was still in effect. As noted previously, the order granting the preliminary injunction included the following provisions:

1.      [The Devers] are prohibited from interfering with [Clark's] quiet enjoyment of the subject business and real estate;

2.      [The Devers] provide defendant Glenn Clark with keys to all locks in all buildings located on the subject real estate;

3.      [The Devers] not enter upon the subject real estate until resolution of this case unless express consent is given by Glenn Clark;

4.      [The Devers] cease collection of accounts receivable and turn over to [Clark] any money collected on invoices issued after July 1, 2005.

The terms of the preliminary injunction defeat any claim that the Devers had a legitimate expectation of privacy on December 13. Rather than giving the Devers rights to APC, the preliminary injunction *excluded* them from the premises. Fred Dever's presence at APC on the morning of December 13 was contrary to the state court order and could have been punished by civil or criminal contempt. *See Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 438 (1976). Under these circumstances, the Devers had no legitimate expectation of privacy in APC when the defendants arrived.

The Devers argue, however, that the preliminary injunction was erroneously issued and consequently that they were entitled to disobey it. This argument is without merit. Under the so-called collateral bar rule, "[a]n injunction issued by a court acting within its jurisdiction must be obeyed until the injunction is vacated or withdrawn." *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983). When faced with a court order they believed to be incorrect, the proper course

7

of action was for the Devers to appeal the order, not disobey it. *See Spangler*, 427 U.S. at 439. This rule reflects the public policy of promoting respect for the rule of law. *W.R. Grace*, 461 U.S. at 766; *see also Walker v. City of Birmingham*, 388 U.S. 307, 320-21 (1967). Consequently, the Devers were bound to obey the preliminary injunction "even if it [wa]s erroneously issued." *See Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 585 (6th Cir. 2007); *see also In re Mann*, 311 F.3d 788, 789 (7th Cir. 2002) ("Half of all litigants (the losing half) may believe that the decision is incorrect, but it is essential to the operation of any legal system that unsuccessful litigants abide by the judgment unless they can persuade a higher court to set it aside.").

Here, the Devers have not alleged that the Clark County Court of Common Pleas lacked personal or subject matter jurisdiction over the dispute, nor is there any indication that jurisdiction was lacking. Therefore, the collateral bar rule required the Devers to obey the preliminary injunction, unless an exception to the rule applies. *See GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980). The Devers argue that they were entitled to disobey the preliminary injunction because their situation fits into the following three exceptions: (1) the preliminary injunction was transparently invalid; (2) they had no adequate opportunity for appellate review; and (3) the preliminary injunction required them to irretrievably surrender their constitutional rights.

First, it is well established that a party may ignore an injunction if it is "transparently invalid or had only a frivolous pretense to validity." *See Walker*, 388 U.S. at 315; *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 306 (1995) (quoting *GTE Sylvania*, 445 U.S. at 386). The Devers assert that the preliminary injunction was transparently invalid because it was a "clearly improper

exercise[] of judicial authority" under Ohio law.  This, however, amounts to an argument that the preliminary injunction was erroneously issued which, as shown above, would not have excused compliance.  The Devers have given us no other reasons why they believe the court order was transparently invalid, and we can find none.  The preliminary injunction bore all of the hallmarks of validity.  Before ruling on the motion, the trial court held an evidentiary hearing and received written submissions from the parties.  The court then produced a five-page, single-spaced opinion applying relevant Ohio law and explaining why a preliminary injunction should issue.  The first page of the order contained a stamp indicating that it had been filed with the clerk of court, and the last page bore the judge's signature.  Under these circumstances, the preliminary injunction appeared on its face to be valid, and the Devers had no right to disobey it.

Second, relying on *United States v. Dickinson*, 465 F.2d 496, 511 (5th Cir. 1972), the Devers argue that they were free to disobey the court order if they had no opportunity for "adequate and effective" appellate review.  *See id.*; *see also Walker*, 388 U.S. at 318-19 (speculating that an exception to the collateral bar rule might arise if "delay or frustration" occurred in the state appellate courts).  The record does not support the Devers' contention that they had no opportunity for appellate review because they did, in fact, obtain interlocutory appellate review.  The Court of Appeals of Ohio set an expedited briefing schedule and issued its stay just ten days after the Devers filed their notice of appeal.  Despite this, the Devers insist that the stay was not an adequate remedy because "Clark diverted [their] assets, consumed [their] property, irreparably destroyed [their] business relationships and filed for Bankruptcy protection."  Even assuming, *arguendo*, that monetary damages would not adequately compensate the Devers for their lost business, this

9

argument is unavailing. A review of the record indicates that Clark's alleged mismanagement of the company occurred between July and October of 2005–*before* the preliminary injunction was issued. The bankruptcy filing, on the other hand, occurred *after* the appellate court issued the stay. None of the alleged harms, then, flowed from the adequacy or inadequacy of Ohio appellate procedure between December 12 and December 22, 2005. What appears more likely is that the parties themselves destroyed APC by wresting control of the company back and forth until they had alienated all of their customers.

Finally, the Devers cite *Maness v. Meyers*, 419 U.S. 449, 460 (1975), and the Fifth Circuit's opinion in *Dickinson*, 465 F.2d at 511, for the proposition that compliance with the preliminary injunction was excused if it would have required an irretrievable surrender of their constitutional rights. As a threshold issue, it is doubtful that this exception to the collateral bar rule applies to the instant case. *Maness* involved the Fifth Amendment privilege against self-incrimination, and the Supreme Court limited the exception to the facts of that case. *See* 419 U.S. at 461 n.8. Even if the exception was applicable, it would not excuse the Devers' disobedience with the challenged order because the preliminary injunction did not require the Devers to surrender their property rights *irretrievably*. *See Dickinson*, 465 F.2d at 512. Rather, it was a temporary order that gave possessory rights to Clark only until the trial court could render a decision on the merits. In sum, none of the exceptions to the collateral bar rule apply.

Because the Devers were required to obey the preliminary injunction, they had no legitimate expectation of privacy in APC on December 13, 2005. Consequently, no "search" occurred within the meaning of the Fourth Amendment and the Devers have not presented evidence from which a

rational trier of fact could find a violation of their right to be free from an unreasonable search. It bears repeating that the Devers' evidence regarding the conduct of the Sheriff Defendants has no impact on this conclusion. Rather, what is dispositive is the existence of a facially valid court order and Fred Dever's conduct in refusing to obey that order.

Moreover, because the preliminary injunction gave possessory rights to Clark, the Devers had no legitimate possessory interest in APC on December 13, 2005. Because the Devers have not established a possessory interest in the premises, they have not presented sufficient evidence from which a rational trier of fact could conclude that an unreasonable seizure occurred. *See United States v. Perez*, 440 F.3d 363, 374 (6th Cir. 2006).

2.

The Devers also allege that the defendants violated their Fourteenth Amendment right to procedural and substantive due process. To proceed on either of these claims, the Devers must present evidence from which a rational trier of fact could conclude that they had a recognized property interest in APC at the time they allege their rights were violated. *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (procedural due process); *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992) (substantive due process). Property rights are defined not by federal constitutional law but by state law–in this case, by Ohio law. *See Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Ohio courts recognize the collateral bar rule. *See Nat'l Equity Title Agency, Inc. v. Rivera*, 770 N.E.2d 76, 78 (Ohio Ct. App. 2001). Because the preliminary injunction defeats the Devers' claim of a possessory interest on December 13, 2005, these claims also fail.

11

Moreover, because the Devers have not established a violation of their Fourth and Fourteenth Amendment rights, we need not reach the question of whether the Sheriff Defendants were entitled to qualified immunity. *See Silver*, 966 F.2d at 1036.

B.

Finally, the Devers assert state law claims for the torts of conversion and trespass. Again, because the Devers have not presented evidence from which a rational trier of fact could find that they enjoyed a possessory interest–a necessary prerequisite to claims of conversion and trespass–these claims similarly fail. *See Dice v. White Family Cos.*, 878 N.E.2d 1105, 1109 (Ohio Ct. App. 2007) (conversion); *Brown v. Scioto County Bd. of Comm'rs*, 622 N.E.2d 1153, 1161 (Ohio Ct. App. 1993) (trespass).

III.

For the foregoing reasons, we affirm the judgment of the district court.