ROGER BERMAN *et al.*, Plaintiffs-Appellees, v. RAYMOND J. DEMPSEY, SR., *et al.*, Defendants-Appellants.

First District (6th Division)   No. 1—92—1852

Opinion filed February 4, 1994.

J. Douglas Weingarten, of Chicago, for appellants.

Foran & Schultz, of Chicago, for appellees.

JUSTICE RAKOWSKI delivered the opinion of the court:

The appellees, Roger and Esther Berman (plaintiffs), filed an action for fraud and breach of contract against the appellants Raymond J. Dempsey, Sr. (Dempsey Sr.), Raymond J. Dempsey, Jr. (Dempsey Jr.), and Fulton Management Corp. (defendants).

When defendants failed to appear for a status call, the judge entered an order of default. Following a hearing, judgment was entered against the defendants for compensatory and punitive damages. On appeal, the defendants contend that it was error for the court to enter a default and also that the evidence does not support an award of punitive damages.

The facts follow. On November 23, 1988, the plaintiffs purchased from the defendants certain real estate in Chicago for $4 million. Subsequently, upon learning that representations made by defendants concerning the real estate were untrue, plaintiffs filed a verified complaint in the chancery division alleging fraud and breach of contract and requested both compensatory and punitive damages. The gist of the complaint, filed on February 13, 1990, is that the defendants made material misrepresentations regarding cash flow, leases and expenses. Specifically, the complaint alleges that the defendants stated the cash flow was $588,754.78, when it was $211,327. The complaint describes, in detail, each misrepresentation that contributed to the shortfall.

On March 21, 1990, an attorney filed an appearance for the defendants and then filed an unverified answer with affirmative defenses on April 20, 1990. On September 23, 1991, upon motion, Judge Hofert allowed counsel for the defendants to withdraw, gave the defendants 21 days to file a supplemental appearance, and set the matter for status on October 24, 1991. When no one appeared at the status call, Judge Hofert entered the following order:

"This matter coming on to be heard for status, the court being advised in the premises, it is hereby ordered:

1. Defendants Raymond J. Dempsey, Sr., Raymond J. Dempsey, Jr., Fulton Management Corporation and Chicago Title and Trust u/t/a 1085004 are found to be in default.

2. A copy of this order shall be mailed by registered mail to each defendant within five days of the date of this order.

3. A hearing on damages is set for November 8, 1991 at 10:30 a.m. without further notice."

Judge Hofert then transferred this case to the law division for

prove up. On October 25, 1991, Dempsey Jr. filed a supplemental appearance. He did not, however, move to vacate the order of default. After several continuances, Judge Virgilio held a prove up hearing on February 21, 1992. Dempsey Sr. and Dempsey Jr. were present. After hearing evidence from the plaintiffs, the judge found the three defendants jointly and severally liable for $2,600,000 in compensatory damages and $100,000 in punitive damages.

The defendants present two issues on appeal: (1) whether the default was properly entered; and (2) whether an award of punitive damages was erroneous.

Section 2—1301(d) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1301(d)) provides:

> "Judgment by default may be entered for want of an appearance, *or* for failure to plead, but the court may in either case, require proof of the allegations of the pleadings upon which relief is sought." (Emphasis added.)

Despite the plain reading of the statute and the fact that at the time of default no appearance was on file, the defendants argue that the default order was improper. In support, defendants rely on *Harris v. Juenger* (1937), 367 Ill. 478, 11 N.E.2d 929, and *Hawthorne Paper Sales Co. v. Kolf* (1963), 41 Ill. App. 2d 346, 190 N.E.2d 604. In *Harris*, the court allowed the defendants' attorneys to withdraw although the defendants had an answer to the complaint on file. The court then ordered the defendants to replead. Later, the court entered a default and judgment because the defendants failed to answer. On appeal, the issue addressed was whether the default for failure to file an answer was proper when an answer was on record. The court stated that the withdrawal of the attorneys did not result in the withdrawal of the answer on file and, therefore, the default and judgment were set aside.

In *Hawthorne Paper Sales Co.*, while the defendant had an answer on file, he moved to file an amended answer. An agreed order was entered allowing the defendant to file an amended answer within 20 days. Later, judgment was entered due to the defendant's failure to file the amended answer. The court allowed the defendant's motion to vacate the judgment and the plaintiff appealed. The court affirmed, finding that the judgment was improper because there was a defense on file. That defense raised issues which the defendant was entitled to have decided by a jury. The order allowing leave to file the amended defense did not cause the original pleading to be withdrawn, superseded or stricken. While we agree with the holdings of these cases, neither addresses the issue *sub judice, i.e.*, whether it is proper to default a party for failing to file a supplemental appearance after the original appearance is withdrawn.

As we understand it, the defendants' contention is that because the appearance was to be a supplemental appearance, a default was not proper because Supreme Court Rule 13(c)(5) does not provide for the entry of a default when a supplemental appearance is not filed. Supreme Court Rule 13(c)(5) states:

> "Unless another attorney is, at the time of such withdrawal, substituted for the one withdrawing, the party shall file in the case within 21 days after the entry of the order of withdrawal a supplementary appearance, stating therein an address at which the service of notices or other papers may be had upon him. In case of his failure to file such supplementary appearance, notice, if by mail, shall be directed to him at his last known business or residence address." 134 Ill. 2d R. 13(c)(5).

The "Historical and Practice Notes" state that Rule 13(c)(5) contains "some purely procedural provisions designed to facilitate the forward progress of the action when withdrawal has been permitted." (Ill. Ann. Stat., ch. 110A, par. 13, Historical & Practice Notes, at 32 (Smith-Hurd 1985).) This rule patterns Circuit Court Rule 1.4. (*In re Marriage of Pitulla* (1990), 202 Ill. App. 3d 103, 120, 559 N.E.2d 819.) "The purpose of Rule 1.4 *** is to inform the court and the parties of who is properly representing each party and where that person may be served with notice. Neither rule specifies any sanctions for noncompliance." (*Pitulla*, 202 Ill. App. 3d at 120.) In *Pitulla*, the failure of the attorney appearing before the court to file an appearance was inconsequential because the case proceeded without any apparent objection, inconvenience or confusion by the court or the parties as to who was properly representing whom and without any claim or evidence of prejudice to petitioner. *Pitulla*, 202 Ill. App. 3d at 120.

■ In the case *sub judice*, however, the defendants did not file a supplemental appearance within 21 days as required by the September 23, 1991, order. At the October 24, 1991, status, no appearance was on file and none of the defendants were in court. Under these circumstances, it was entirely proper for the court to enter a default order.

While it is true that Dempsey Jr. did file a *pro se* appearance on October 25, 1991, the order of default had already been entered. The prove up hearing was held on February 21, 1992, after it was continued four times (December 13, 1991, January 15, 1992, January 31, 1992, and February 13, 1992). During this time, the defendants never moved to vacate the default order and did not enter any further appearances. The only time that the defendants mentioned an attorney was on the date of the prove up hearing when Dempsey Jr.

tendered to the court a letter from a Florida attorney that stated the defendants were filing for bankruptcy.

Due to the abovestated reasons, we find that the defendants were properly defaulted for failing to file an appearance.

More importantly, however, even if we were to find that it was error to default the defendants, they were in no way prejudiced because a trial was held on the issues of liability and damages.

In *Teitelbaum v. Reliable Welding Co.* (1982), 106 Ill. App. 3d 651, 435 N.E.2d 852, the case was set for trial on May 8, 1981, by court order. Defendant's counsel learned he would not be able to be in court on the trial date, informed plaintiff's counsel of this on May 6 and asked plaintiff's counsel to request a continuance. The defendant also spoke to the court's secretary regarding this. The plaintiff's counsel relayed the message to the court but answered ready for trial on behalf of the plaintiff. The court then entered an order of default against the defendant, and after hearing testimony concerning liability and damages, entered judgment on the default. The court denied the defendant's motion to vacate the default. In affirming, the *Teitelbaum* court stated that "the procedure *** where an answer [is] on file but the defendant [does] not participate in the hearing is an *ex parte* trial." (106 Ill. App. 3d at 658-59.) The court held that because the trial court had heard evidence on both liability and damages, the May 8 proceeding amounted to an *ex parte* trial even though it inaccurately termed the order one of default. See also *Dils v. City of Chicago* (1978), 62 Ill. App. 3d 474, 378 N.E.2d 1130.

In the case *sub judice*, both Dempsey Sr. and Dempsey Jr. appeared at the hearing without an attorney. At that hearing, the plaintiffs called as witnesses Scott Revolinski, a real estate appraiser who appraised the real estate at issue, and Roger Berman, a plaintiff. Roger Berman testified regarding each allegation in the complaint. Dempsey Jr. cross-examined both witnesses. Dempsey Jr. then testified in narrative form, and the plaintiffs cross-examined him. Roger Berman then testified as a rebuttal witness. Although Judge Virgilio stated at the hearing that the matter was set for a "prove-up on damages only," he went on to conduct a trial on all issues. Further, in ruling on the defendants' post-trial motion, Judge Virgilio stated that he had "found in favor of the plaintiffs and against the defendants on the issue of liability." In our view these facts are even stronger than the facts in *Teitelbaum*.

The defendants also argue that the evidence at the hearing did not support an award for punitive damages.

This court observes that " '[t]he manifest weight of the evidence is that which is "the clearly evident, plain and indisputable weight of

the evidence." [Citations.] In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent.' " *Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 54, 426 N.E.2d 1276, quoting *In re Application of County Collector* (1978), 59 Ill. App. 3d 494, 499, 375 N.E.2d 553.

In *Home Savings & Loan Association v. Schneider* (1985), 108 Ill. 2d 277, 284, 483 N.E.2d 1225, the court stated:

> "Punitive damages are properly recoverable in a fraud action 'where the false representations are wantonly and designedly made.' [Citation.] While deceit alone cannot support a punitive damage award, such damages may be allowed 'where the wrong involves some violation of duty springing from a relation of trust or confidence, or where the fraud is gross, or the case presents other extraordinary or exceptional circumstances clearly showing malice and willfulness.' "

As stated previously, both Roger Berman and Dempsey Jr. testified extensively regarding the occurrences leading up to the complaint. The plaintiff's testimony tracked the allegations in the complaint. Roger Berman testified that a lease presented to the plaintiffs as valid was not effective and binding; that another tenant only paid half the rent indicated on the lease; that a contract to provide refrigeration to another tenant for $2,165 per month was to end soon after the date of closing on the real estate; that a contract to provide steam service to another tenant beginning on September 1, 1988, for $4,500 per month was a forgery; that certain tenants did not pay real estate taxes as represented by defendants; that electrical service cost was about $10,000 more per year than information provided by the defendants; that some Fulton Management employees were paid in cash without taxes being withheld or not paid for overtime that added $30,000 per year to the operating expenses; that there were no tenants in some units as represented by the defendants; that the defendants did not disclose a promise to do some remodeling work for some tenants; and that the defendants stated that some equipment was in good working condition when it was not.

█ The defendants contend that this testimony does not amount to gross fraud and is not an extraordinary or exceptional circumstance showing malice or wilfulness. We disagree. We note that the defendants do not argue that there was no fraud, only that this did not amount to gross fraud that would allow an award of punitive damages. The evidence shows that the plaintiffs bought the property for a sizable amount of money and the misrepresentations were such that the defendants knew they were false. The defendants did not cite any authority that shows that these facts do not constitute gross

fraud or extraordinary or exceptional circumstances showing malice or wilfulness. The trial judge, as the trier of fact, is in a position superior to a court of review to observe the demeanor of witnesses while testifying, judge their credibility and to determine the weight their testimony should receive. (*In re Application of the County Treasurer* (1989), 131 Ill. 2d 541, 549, 546 N.E.2d 506.) Under these circumstances, we cannot say that it was against the manifest weight of the evidence to conclude that these representations were wantonly and designedly made and that the fraud was gross.

Affirmed.

EGAN, P.J., and McNAMARA, J., concur.