2023 IL App (1st) 211339-U

No. 1-21-1339

Order filed on: May 26, 2023

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| IN RE MARRIAGE OF: | ) | Appeal from the Circuit Court of |
| | ) | Cook County, Illinois |
| PAMINDER S. PARMAR, | ) | |
| | ) | Circuit Court No. 2018 D 430018 |
| Petitioner/Counter Respondent-Appellant, | ) | |
| | ) | The Honorable |
| v. | ) | Mary Trew |
| | ) | Judge Presiding |
| KARISHMA K. RAI, | ) | |
| | | |
| Respondent/Counter Petitioner-Appellee. | | |

_____

JUSTICE C.A. WALKER delivered the judgment of the court.
Justice Oden Johnson concurred in the judgment. Justice Tailor dissents.

**ORDER**

*Held*: The trial court did not abuse its discretion in denying Petitioner/Counter Respondent's motion to vacate pursuant to section 2-1301 where substantial justice was done between the parties.

¶ 1      On January 18, 2018, Petitioner/Counter Respondent-Appellant Paminder Parmar[1] filed a petition for dissolution of marriage from Respondent/Counter Petitioner-Appellee Karishma Rai in the circuit court of Cook County. Rai filed a counter-petition to dissolve the marriage on February 26, 2018. Parmar's attorney withdrew in November 2020, and Parmar was ordered to file his appearance but failed to do so. Hence, Parmar was found to be in default on May 18, 2021. The court conducted a prove-up hearing on Rai's dissolution petition on June 1, 2021, and entered a final allocation judgment, parenting plan, and default judgment for dissolution of marriage. New counsel for Parmar filed a section 2-1301 motion to vacate the default judgment on June 30, 2023, and the trial court denied the motion. Parmar now appeals, arguing that: (1) the trial court abused its discretion by denying his section 2-1301 motion to vacate because he did not receive proper notice and had a reasonable basis to believe the parties were reconciling; and (2) the judgment should be vacated. For the following reasons, we affirm the trial court's judgment.[2]

¶ 2                                    I. BACKGROUND

¶ 3      The parties were married on November 14, 2009. Two children were born as a result of the marriage. On January 18, 2018, Parmar filed a petition for dissolution of the marriage in the circuit court of Cook County. Rai filed a counter-petition on February 26, 2018. The court entered an order pursuant to 750 ILCS 5/604.10(b), assigning Dr. Phyllis E. Amabile as an Allocation of Parental Responsibilities Evaluator. Dr. Amabile was to provide the court with professional advice on issues relating to the best interest of the children. After ongoing litigation, the case was

---

[1] The notice of appeal spells petitioner's name as "Parmer." Further examination of the record demonstrates the correct spelling is "Parmar."

[2] Parmar raises several issues for review in his brief. The two primary issues for review are: (1) whether the trial court abused its discretion by denying Parmar's motion to vacate pursuant to section 2-1301(e); and whether the default judgment should be vacated should this court find jurisdiction.

transferred to the reconciliation calendar on June 11, 2019. Parmar's counsel filed a motion to withdraw as counsel, which was granted on November 24, 2020. Parmar was given 21 days to file his appearance, but he failed to do so.

¶ 4     Though no appearance was filed, Nicholas Hoeft, Parmar's business/estate planning attorney, contacted Rai's counsel in an attempt to settle attorney fees and other matters. In an email on February 9, 2021, Rai's counsel indicated that Parmar failed to pay attorney fees that were agreed upon during the prior year, and that the judge made it clear at the last court date that Parmar needed to file a *pro se* appearance or Hoeft needed to file an appearance on his behalf. Because Parmar had not filed his *pro se* appearance and failed to appear in court, Rai filed a motion for default judgment on May 4, 2021. The court entered a default order on May 18, 2021, and set the matter for prove-up and entry of default judgment. On June 1, 2021, the morning of the prove-up hearing, Parmar emailed the court and Rai's counsel. The email stated in part that the kids were living with him out of state and that Rai's counsel should be sanctioned for requesting settlement fees. When Parmar failed to appear or otherwise plead, the trial court entered a default judgment against Parmar and dissolved the marriage.

¶ 5     The judgment for dissolution of marriage provided that: (1) the former marital property at 126 Clinton, Oak Park, Illinois 60302 was awarded to Parmar; (2) the parties were awarded any financial accounts free and clear of any interest by the other party; (3) child expenses were to be divided equally between the parties; (4) Parmar pay Rai child support in the amount of $1,000.00 each month; (5) Parmar be solely responsible for his attorney fees and costs; (6) Parmar pay Rai the sum of  $100,000.00 as contribution to Rai's attorney fees; (7) Parmar receive $3,000,000.00 as a result of the division of assets; and (8) Rai receive $1,000,000.00 as a result of the division of

marital assets. In the allocation judgment and parenting plan, the court ordered, *inter alia*, that Rai have sole parental responsibilities and decision-making for the minor children, and that the children's primary physical residence would be with Rai.

¶ 6     The Singewald Law Firm appeared on behalf of Parmar and filed a motion to vacate the default judgment on June 30, 2021. The motion alleged Parmar was under the belief that the parties were reconciling because they had been residing together with their children in Sacramento, California since January 2, 2021, and Parmar did not pay attention to any notices about the divorce proceedings since they were living in California. Parmar further alleged that the court lost jurisdiction because the parties and children had been residing in California for over six months, and the default judgment should be vacated pursuant to 735 ILCS 5/2-1301 (e). In response to Parmar's motion, Rai alleged that Parmar was aware of the court order requiring him to file an appearance. Rai argued Parmar had notice based on the email Parmar sent to the court and Rai's counsel on June 1, 2021. In the email, Parmar referenced the email from Rai's counsel that advised Parmar of the court date.

¶ 7     On September 17, 2021, a hearing was held on the motion to vacate default judgment. During the hearing, Parmar argued that he did not receive proper notice because he was residing in California, and case law supported that the judgment be vacated under 735 ILCS 5/2-1301(e). In response, the following exchange occurred:

> THE COURT: "But -- let me just intercede. There has been extensive litigation in
> this matter for years. 604(b)s, everything you can think of. I think those cases refer
> to defaults where somebody has defaulted, and they're not heard. This case was, in

fact, initiated by your client. He was heard. There was a lot of input given to this case.

In fact, as I said, he was the petitioner. We had a plethora of court dates, litigation. This is not something where he was defaulted because he didn't get a chance to appear. He's the one who started it. So that's not really a viable argument, and I don't think the case law applies to this actual situation. You may continue, though.

MR. SINGEWALD: The case law, it does say, though, that the movement need not demonstrate a meritorious defense or due diligence. And in this matter, I would like to highlight that when former counsel withdrew from the case in or about November of 2020, from that period until the Motion of Default sometime in May, I believe it was, there was limited to no court proceedings during that period of time. And, in fact –

THE COURT: Well, let me just say that once the attorney withdrew, under the Illinois Supreme Court rule, your client had 21 days to file his appearance. He did not. This matter continued far behind that 21-day period until the next May, so that would have been roughly six months.

***

MR. SINGEWALD: During that period of time, not only were they further discussing settlements with opposing counsel, but there was also talks of a post-nuptial agreement being prepared between the two, and my client steadfastly had been under the impression that they were trying to reconcile. As I said, they were living under the same roof in Sacramento, California for five months. He truly

thought they were reconciling, Your Honor. And I'm going to conclude, Your Honor, with saying…

THE COURT: Those are outside facts that really don't pertain to what he needed to do procedurally in order to protect his rights. I bent over backwards. And there is a Supreme Court mandate on this court and all the circuit courts that the issues relative to minor children are supposed to be concluded within a particular period of time.

This went far outside that time, so that's a problem for me. And now he's coming back after not participating and wanting relief from a default judgment. No, it shouldn't have been entered. It didn't have to be. He should have participated. He had plenty of notice, plenty of time."

¶ 8    The court denied the motion to vacate default judgment. This appeal follows.

¶ 9                                  II. JURISDICTION

¶ 10    The trial court entered a judgment dissolving the marriage on June 1, 2021, and a final order on September 27, 2021. A notice of appeal was timely filed on October 14, 2021. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2007).

¶ 11                                 III. ANALYSIS

¶ 12    On appeal, Parmar argues that: (1) the trial court abused its discretion under section 2-1301(e) by denying his motion to vacate default judgment; and (2) that the default judgment should be set aside should this court find jurisdiction.

¶ 13    As a preliminary matter, although Rai did not file a brief responding to Parmar's arguments, we may decide this appeal on the merits as the record and claimed errors are straightforward and can be determined without the aid of an appellee's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 14    Once the trial court enters a default order, defendant may, within 30 days, move to vacate the order pursuant to section 2-1301 of the code of civil procedure, and trial court may set aside the default order "upon any terms and conditions that shall be reasonable." 735 ILCS 5/2–1301(e) (West 2016). Denying a 735 ILCS 5/2-1301(e) motion to vacate or set aside a  default order is within the trial court's discretion, and it will not be reversed absent an abuse of discretion or denial of substantial justice. *Litvak v. Black*, 2019 IL App (1st) 181707, ¶ 23.  An abuse of discretion occurs when the trial court acts arbitrarily, without conscientious judgment, exceeds the bounds of reason, and ignores recognized principles of law resulting in substantial injustice. *In re Marriage of Marsh*, 343 Ill. App. 3d 1235, 1240 (2003). "An abuse of discretion also occurs when no reasonable person could find as the trial court did."  *In re Marriage of Betsy M*., 2015 IL App (1st) 151358 ¶ 61.

¶ 15    When determining if the court should vacate an order under section 2-1301(e), the movant need not show the existence of a meritorious defense and a reasonable excuse for not defending. *Draper and Kramer, Inc. v. King*, 2014 IL App (1st) 132073. The overriding consideration is whether "substantial justice" has been done and whether it is reasonable under the circumstances to compel the other party to go to trial on the merits. *In re Haley D.*, 2011 IL 110886, ¶ 57. To determine whether substantial justice has been achieved, courts should consider diligence or lack thereof, the existence of a meritorious defense, the severity of the penalty resulting from the

judgment, and the relative hardships on the parties. (internal quotations omitted) *In re Marriage of Harnack and Fanady*, 2014 IL App (1st) 121424, ¶ 45. "In making this assessment, a court should consider all events leading up to the judgment," as "'[w]hat is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome. [Citation.]'" *Haley D.*, 2011 IL 110886, ¶ 69. (quoting *Mann v. Upjohn Co.,* 324 Ill.App.3d 367, 377 (2001)).

¶ 16    Here, the trial court explained that it entered the judgment because of Parmar's failure to file an appearance. Parmar made no contact with the court from the time of his attorney's withdrawal on November 19, 2020, until he emailed the court and Rai's attorney on June 1, 2021. Seeking to excuse his absence, Parmar claims he believed that he and his wife were reconciling while living in California, and that his argument is supported by the fact that the case was never removed from the reconciliation calendar.

¶ 17    Cook County Rule 13.2(g) provides a reconciliation calendar for filed cases, whereby all prior orders are suspended unless otherwise agreed by the parties or ordered by the court. However, "[a]ll cases on the reconciliation calendar shall be called for status within one year, and if the matter has been on the calendar for one year it will be dismissed or returned to the active calendar." Cook Co. Cir. Ct. R. 13.2(g)(i). "Upon motion of either party, the case shall be removed from the reconciliation calendar and returned to the active calendar." Cook Co. Cir. Ct. R. 13.2(g)(ii).  Here, the case was assigned to the reconciliation calendar on June 11, 2019. Although the record does not reflect an order removing the case from the reconciliation calendar, court rules dictate that the case would be returned to the active calendar by June 11, 2020. In addition, Rai's motion for default filed on May 4, 2021, provided Parmar with further notice that the case was removed from

the reconciliation calendar. Therefore, we do not find this case's assignment to the reconciliation calendar sufficient to excuse his appearance in the case.

¶ 18    Parmar further alleges that orders from November 24, 2020, January 19, 2021, January 28, 2021, and March 8, 2021, were not sent to him. Parmar cites *Admiral Corp. v. Newell*, 348 Ill. App. 180 (1st Dist. 1952) to support his claim. In *Admiral Corp*, an attorney appeared on behalf of a defendant, but no address was listed in the appearance where notice or other documents could be sent. *Id* at 182. The attorney's failure to list an address violated section 20 of the Civil Practice Act. *Id.* A motion for default was filed, however, no address was listed as to where the notice was mailed. *Id.* A default order was entered, but upon a hearing, the court vacated the judgment. *Id* at 183-184. On appeal, this court found it is imperative that there is substantial compliance with rules regarding notice for default judgment. *Id* at *184.*

¶ 19    We find *Admiral Corp* inapposite from the facts here. Critically, after Parmar's attorney withdrew, neither Parmar nor a new attorney filed an appearance. Furthermore, Parmar's notice argument is undermined because of his email to the court on June 1, 2021. In the email, he attached another email from Rai's counsel to Hoeft, and both Parmar and Rai were copied. In the email, Rai's attorney explained that the trial court made clear that Hoeft needed to file an appearance or have Parmar file a *pro se* appearance. Hoeft never appeared in court on Parmar's behalf, and Parmar never filed a *pro se* appearance.

¶ 20    Parmar's contention that the entry of the default judgment was unwarranted due to defective notice is unpersuasive. "The object of notice is to inform the party notified, and if the information is obtained in any way other than by formal notice, the object of notice is attained."

*In re Marriage of Gard*, 118 Ill.App.3d 303, 308 (1983), quoting *Schumacher v. Wolf*, 125 Ill. App. 81, 84. (1905). Furthermore, Supreme Court Rule 13 (C)(5) states:

> "Unless another attorney is, at the time of such withdrawal, substituted for the one withdrawing, the party shall file in the case within 21 days after entry of the order of withdrawal a supplementary appearance, stating therein an address at which the service of notices or other documents may be had upon him or her. A self-represented litigant may supply an e-mail address for service, pursuant to Rule 11(b). In the case of the party's failure to file such supplementary appearance, subsequent notices and filings shall be directed to the party at the last known business or residence address." IL R S CT Rule 13 (c)(5).

While default judgment is a drastic measure that should only be employed as a last resort, it may be justified when a party fails to file a timely appearance after his attorney withdraws from the case. See *Berman v. Dempsey,* 257 Ill.App.3d 496, 498–500 (1994). We find that the record demonstrates Parmar knew he needed to file an appearance after his attorney was granted leave to withdraw. Parmar made no contact with the court for nearly seven months. His first contact was on the morning that the default order was entered. Furthermore, the record demonstrates that notice of the default order and the default judgment was sent to Parmar at his last known address and to the same email address Parmar used to contact the court. Therefore, we are unpersuaded by Parmar's claim that he did not have proper notice.

¶ 21    Parmar contends that the entry of default judgment was too severe of a sanction. He cites *Heller Financial, Inc. v. Christopher LaSalle and Co., Inc*., 168 Ill. App. 3d 852, 854-55 (1st Dist. 1988) to support his claim. In *Heller*, default judgment was entered in favor of the plaintiff for

failure to file an answer to a breach of contract claim. The defendant moved to vacate the judgment, but the trial court denied the motion. *Id.* On appeal, the defendant claimed the plaintiff terminated the contract prematurely, and that defendant continued to hold the plaintiff's funds because the defendant was awaiting full payment by the plaintiff. *Id* at 854. This court held the default judgment must be vacated because the actual and punitive damages were severe penalties for lack of due diligence. *Id.*

¶ 22     *Heller* is not relevant to the facts here. Unlike the defendant in *Heller*, Parmar initiated the dissolution proceedings and engaged in litigation before the default judgment was entered, and there were years of litigation between the parties where Parmar had the opportunity to be heard. Furthermore, there is evidence that Parmar knew he needed to file an appearance when his counsel withdrew but elected not to do so. Accordingly, we find Parmar's claim that default judgment was too severe a sanction unpersuasive.

¶ 23     Parmar alleges that the allocation judgment places him at a disadvantage because the judgment provides that Rai is the sole decisionmaker for the children and that he is allotted one less day a week to spend with them. Determining the allocation of parenting time and decision-making requires the trial court to consider the credibility of the testimony, weigh the evidence, and exercise its discretion to determine the best interests of the child. See *In re Custody of Sussenbach*, 108 Ill. 2d 489, 498-99 (1985). "In child custody cases, there is a strong and compelling presumption in favor of the result reached by the trial court because it is in a superior position to evaluate the evidence and determine the best interests of the child." *Young v. Herman*, 2018 IL App (4th) 170001, ¶ 64. A reviewing court will not disturb a trial court's order allocating decision-making responsibilities or parenting time unless the court's findings are against the manifest

weight of the evidence or an abuse of discretion. *Jameson v. Williams*, 2020 IL App (3d) 200048, ¶ 47. See also *In re Marriage of Lindsey*, 158 Ill. App.3d 769, 771 (1987). "Under the manifest weight standard, an appellate court will affirm the trial court's ruling if there is any basis in the record to support the trial court's findings." *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 24. "It is well settled that a reviewing court's function is not to reweigh the evidence or assess witness credibility and set aside the circuit court's decision simply because a different conclusion may have been drawn from the evidence." *Jameson*, 2020 IL App (3d) 200048, ¶ 51.

¶ 24    To support his claim that the trial court's ruling was against the manifest weight of the evidence, Parmar cites an excerpt from the report conducted by Dr. Amabile, where she recommended that Parmar be granted more visitation than the default judgment allotted. Specifically, he emphasizes that the allocation of giving him only Tuesday nights conflicts with Dr. Amabile's recommendation that he be granted Tuesday and Wednesday nights with the children. However, this singular excerpt cited by Parmar, without the entire report, is insufficient to demonstrate the trial court's ruling was against the manifest weight of the evidence. The record indicates that the trial judge prioritized incorporating Dr. Amabile's report in the final allocation judgment and parenting plan. Notably, at the prove-up hearing the trial judge sought verification that Parmar would be allocated weekly meetings despite Rai living in California. Furthermore, while it is within the trial court's discretion to seek the advice of an expert, it is also within the court's discretion whether to rely on and consider the recommendations of an expert appointed pursuant to 604 (b). *In re Marriage of Betsy M.*, 2015 IL App (1st) 151358 ¶ 61 See also, *In re Marriage of Saheb*, 377 Ill.App.3d 615, 628 (2007).  We find the final allocation judgment and

parenting plan were not against the manifest weight of the evidence, we also find no abuse of discretion.

¶ 25    Lastly, Parmar asks us to review the underlying judgment should we find jurisdiction. Parmar claims that the dissolution of marriage judgment was not a final judgment because his petition for dissolution of marriage is still pending and matters regarding the distribution of property and contribution to attorney fees are still unresolved. "A judgment * * * is not final unless it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment." *In re Marriage of Susman*, 2012 IL App (1st) 112068, ¶ 12. When an order does not resolve all the claims brought by a party, the order is not final and appealable. *Id.* "A petition for dissolution advances a single claim; that is, a request for an order dissolving the parties' marriage. The numerous other issues involved, such as custody, property disposition, and support are merely questions which are ancillary to the cause of action." *In re Marriage of Leopando*, 96 Ill.2d 114, 119 (1983). A petition for dissolution is not fully adjudicated until all of the ancillary issues are resolved. *Id.*

¶ 26    Here, at issue in the dissolution of marriage action were, *inter alia,* the allocation of the parties' assets, custody of the children, and attorney fees. The trial court resolved these issues by awarding Parmar the marital estate, awarding Parmar $3,000,000.00 and awarding Rai $1,000,000.00 as a result of the division of assets, granting Rai sole parental responsibilities and decision-making of the minor children and that the children's primary physical residence would be with Rai, and ordering Parmar to pay Rai the sum of $100,000.00 as contribution to Rai's attorney fees. The trial court did not reserve any of the issues involved in the petition for dissolution for later determination. Because there is no evidence that there are ancillary issues left to resolve,

we find that the judgment for dissolution of marriage was a final judgment that terminated the litigation between the parties and decided their "dispute" entirely. *Jackson v. Hooker,* 397 Ill.App.3d 614, 620 (2010).

¶ 27  Parmar contends that his claims to be awarded his non-marital property and an equitable portion of the marital property are still pending. Parmar argues that the failure to properly distinguish and distribute marital and non-marital property between the parties caused the court to abuse its discretion by awarding Parmar $3,000,000.00 and awarding Rai $1,000,000.00 of assets. Parmar has not identified any marital or non-marital property that needs to be distributed. Nor is there any evidence in the record of any property left to distribute.

¶ 28  An appellant has the burden of presenting a sufficiently complete record of the proceedings at trial to support a claim of error. *Foutch v. O'Bryant*, 99 Ill.2d 389, 391–92 (1984). An incomplete record on appeal compels us to presume that the trial court order conformed with the law and had a sufficient factual basis. *Id at 392*. Any doubts that arise from the incompleteness of the record will be resolved against the appellant. *Id*. Parmar has not provided any evidence in the record to support his argument that the trial court did not dispose of all the property at issue between the parties. Hence, we presume the court's judgment conformed with the law and had a sufficient factual basis.

¶ 29  Lastly, Parmar argues that the trial court abused its discretion by awarding Rai $100,000.00 as contribution for attorney's fees because no petition for contribution  to attorney fees was ever filed by Rai, and the court never considered the financial resources of the parties.

¶ 30  Relevant here is section 508 of the Illinois Marriage and Dissolution of Marriage Act (Act). Generally, the Act governs attorney fees, including petitions for contribution of attorney fees and

costs incurred in initial dissolution proceedings in post-decree proceedings. *Blum v. Koster,* 235 Ill.2d 21, 46 (2009). Section 508 states in relevant part:

"The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. Interim attorney's fees and costs may be awarded from the opposing party, in a prejudgment dissolution proceeding in accordance with subsection (c–1) of Section 501 and in any other proceeding under this subsection. At the conclusion of any pre-judgment dissolution proceeding under this subsection, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of Section 503 and in any other proceeding under this subsection. Fees and costs may be awarded in any proceeding to counsel from a former client in accordance with subsection (c) of this Section. Awards may be made in connection with the following:

(1) The maintenance or defense of any proceeding under this Act.

(2) The enforcement or modification of any order or judgment under this Act.

(3) The defense of an appeal of any order or judgment under this Act, including the defense of appeals of post-judgment orders.

(3.1) The prosecution of any claim on appeal (if the prosecuting party has substantially prevailed).

(4) The maintenance or defense of a petition brought under Section 2–1401 of the Code of Civil Procedure seeking relief from a final order or judgment under this Act.

(5) The costs and legal services of an attorney rendered in preparation of the commencement of the proceeding brought under this Act.

(6) Ancillary litigation incident to, or reasonably connected with, a proceeding under this Act." 750 ILCS 5/508 (West 2016).

¶ 31     The record demonstrates that Rai filed a Petition for Interim and Prospective Attorneys' Fees and Costs And Contribution to Attorney Fees and Costs on November 7, 2018. In an order entered on January 9, 2019, the trial court denied the petition for interim attorney fees but reserved the issue of contribution to attorney fees and costs pursuant to section 508(b) of the Act. Parmar also argues that the court failed to consider the parties' financial resources because the court did not have any information about their income. While the record on appeal is deficient as to the parties' finances, the record demonstrates that the trial court had sufficient information to make a determination regarding attorney fees. In its dissolution judgment, the court divided assets "per documents provided by [Parmar] previously in these proceedings and to the best of [Rai]'s knowledge." Furthermore, there is evidence that Parmar provided a financial affidavit, along with his 2016 and 2017 financial and corporate tax returns. As mentioned above, because these documents are absent from the record on appeal, we must construe any doubts against Parmar and presume that the trial court order conformed with the law and had a sufficient factual basis. *O'Bryant*, 99 Ill.2d at 392. Therefore, we find the trial court did not abuse its discretion by awarding Rai the $100,000.00 contribution to attorney fees from Parmar.

¶ 32     In this case, the record shows that the trial court considered whether substantial justice occurred between the parties. At the hearing on the motion to vacate judgment, the judge stated there was litigation on the merits and that substantial justice could not be achieved by vacating the

default judgment. The court noted that when his attorneys withdrew as counsel, Parmar had 21 days to file an appearance, and that the court had given him more time to appear in court than what was required. Parmar was further advised by Rai's counsel throughout the negotiations that he needed to file an appearance, and Parmar has not presented evidence to justify his failure to do so. Without an appearance, Parmar could continue to waste time with no real obligation to resolve the case.

¶ 33    This case lingered in the court for three years, and after the lack of cooperation by Parmar, it would be a substantial injustice if the trial court were to vacate the judgment for dissolution of marriage and require Rai to participate in a new trial. See generally. *Mann v. The Upjohn Co.,* 324 Ill. App. 3d 367, 377-79 (2001). Hence, based on the disposition of property and other allocations in the record on appeal, we find that substantial justice was achieved. The trial court did not abuse its discretion when it denied the section 2-1301 motion to vacate the default judgment.

¶ 34                                IV. CONCLUSION

¶ 35    Based upon our review of the record, we conclude that the trial court did not abuse its discretion in denying Parmar's amended motion to vacate the judgment for dissolution of marriage. The trial court's judgment is affirmed.

¶ 36    Affirmed.

¶ 37    JUSTICE TAILOR, dissenting:

¶ 38    I believe the trial court abused its discretion when it denied Parmar's motion to vacate the default judgment against him, and therefore would reverse and remand for a trial on the merits.

¶ 39    A trial court may, on motion filed within 30 days after entry, set aside a default judgment upon any terms and conditions that shall be reasonable. 735 ILCS 5/2-1301(e) (West 2016).

Illinois has a liberal policy of setting aside default judgments under section 2-1301 of the Civil Practice Law. *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 16. When deciding whether to set aside a default judgment, a court may consider 1) the party's diligence, or lack thereof; 2) whether the party has a meritorious defense; 3) the severity of the resulting penalty; and 4) the relative hardship on the parties. *Draper and Kamer, Inc. v. King*, 2014 IL App (1st) 132073, ¶ 23. However, unlike a petition to vacate a judgment that is more than 30 days old under section 2-1401 of the Civil Practice Law, a movant under section 2-1301 "need not necessarily show a meritorious defense and reasonable excuse for failing to timely assert such defense." *McCluskey,* 2013 IL 115469, ¶ 16. Instead, the overriding consideration should simply be "whether or not substantial justice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits." *Id.* (quoting *In re Haley D.,* 2011 IL 110886, ¶ 69). In considering a motion to vacate a default judgment under section 2-1301, a court "should consider *all events* leading up to the judgment" and should decide what is just and proper based on the facts of the case. *Id.* (emphasis added); *Larson v. Pedersen*, 349 Ill. App. 3d 203, 208 (2004).

¶ 40    A court must be mindful that "entry of default is a drastic remedy that should be used only as a last resort." *In re Haley D.*, 2011 IL 110886, ¶ 69; *Venzor v. Carmen's Pizza Corp.,* 235 Ill. App. 3d 1053, 1058 (1992). Our judicial system operates on the philosophy that, if possible, litigation should be determined on the merits and according to the substantive rights of the parties. *In re Haley D.*, 2011 IL 110886, ¶ 69; *Jones v. Unknown Heirs or Legatees of Fox*, 313 Ill. App. 3d 249, 257 (2000); 735 ILCS 5/1-106 ("This Act shall be liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties.") We review a trial court's order denying a motion to vacate a default

- 18 -

judgment under section 2-1301(e) for an abuse of discretion. *Wells Fargo Bank, N.A. v. Hansen,* 2016 IL App (1st) 143720, ¶ 14. We must also determine whether the trial court's decision "was a fair and just result, which did not deny [the moving party] substantial justice." *Godfrey Healthcare and Rehabilitation Center, LLC v. Toigo*, 2019 IL App (5th) 170473, ¶ 38 (internal quotations and citations omitted).

¶ 41    I begin, as the case law instructs, by reviewing all events leading up to the default judgment against Parmar. This is not a typical default judgment case where the respondent entirely failed to appear or respond to the petitioner's pleading. Rather, this case was heavily litigated over the course of several years on the parties' counter-petitions for dissolution of marriage, during which time the court-appointed guardian ad litem for the minor children submitted a report to the court; the minors' best interests were assessed by a court-appointed expert, Dr. Phyllis Amabile, who prepared and submitted a 41-page report to court; an emergency order of protection was entered, which was later vacated by agreement of the parties; multiple petitions for rule to show cause were filed; motions to compel discovery responses were filed; motions for exclusive possession of property were filed and adjudicated; and petitions for interim and prospective attorneys' fees were ruled on. As Rai acknowledged in her response to Parmar's motion to vacate default judgment, Parmar "actively participated in the litigation and [Dr. Amabile's] 604.10 evaluation." And as Rai further acknowledged in her motion for default judgment, at one time the parties had reached "a verbal agreement on all matters," although settlement documents were never finalized.

¶ 42    After Parmar's former counsel was granted leave to withdraw in November 2020, Parmar failed to file an appearance through counsel or a *pro se* appearance, frustrating the progress of this case for six months. It was only after the circuit court entered a default judgment against him

that newly retained counsel filed an appearance for Parmar. Nevertheless, Parmar's excuse for failing to assert his defenses in a timely manner did not necessarily appear meritless. In his verified motion to vacate the default judgment, Parmar asserts that he was under the impression that he and Rai were reconciling. Indeed, this case was transferred to the circuit court's reconciliation calendar in June 2019, and arguably remained on the circuit court's reconciliation calendar when default judgment was entered against Parmar. It is undisputed that Parmar and Rai signed a lease on a rental home in Sacramento, California, in October 2020; that Parmar had been living there with Rai and their two minor children on a full-time basis since January 2021; and that he was still living there on the date he filed his motion to vacate. Parmar also asserted that in March 2021, he and Rai paid a deposit for tuition for the minors' school for the 2021-22 school year, and that he, Rai and the two minor children took recent family trips to Lake Tahoe, Squaw Valley, and San Francisco.

¶ 43     More pertinently, Parmar did not entirely ignore this case after his counsel was granted leave to withdraw, and email correspondence indicates that reconciliation was still being actively discussed. Nicholas Hoeft, Parmar's estate attorney, attempted to negotiate a resolution with Rai's counsel between December 2020 and February 2021, and it appears that Hoeft appeared in court at least once, although he never filed an appearance on Parmar's behalf. A February 9, 2021, email from Rai's attorney to Hoeft and Parmar stated: "[a]t the last court date the judge made it clear that you need to file your appearance in the dissolution of marriage case or [Parmar] needs to file his *pro se* appearance." Rai's attorney noted that if Parmar agreed to pay Rai's attorneys' fees, that they could attempt to work out the details of a post-nuptial agreement, but if he continued to fail to do so Rai would "move forward with the divorce. This situation is completely up to [Parmar]; it is that simple." In the same email, Rai's attorney wrote:

"All [Parmar] had to do was pay the attorneys' fees and he probably wouldn't have had to do the post-nup and they'd dismiss the divorce case. In fact, my client offered exactly that at one point, but it was just ignored and you showed up. So essentially have him pay the fees or don't, but don't keep on with a bunch of unnecessary dialog [sic]. If he doesn't want to get divorced it has been made clear for a long time that he need[s] to pay the attorneys' fees and costs."

At the hearing on the motion to vacate default judgment, Rai's counsel reminded the circuit court that earlier that year, there had been discussions between the parties about a settlement by way of a post-nuptial agreement. Finally, a couple hours before the hearing on the motion for default judgment, Parmar emailed Rai's counsel, the Chief Judge's office, and the GAL regarding the case, another indication that Parmar was still engaged. In short, although Parmar failed to comply with the Supreme Court Rule and circuit court's orders on filing an appearance, he remained engaged in attempting to reach a resolution.

¶ 44    The default judgment against Parmar did not accomplish substantial justice between the parties, particularly as it relates to the allocation of parenting time for the minors, and it would be reasonable under the circumstances to compel Rai to try this case. The prove-up hearing was a perfunctory one, typical of a divorce prove-up where a respondent has never appeared or responded. Rai's counsel asked Rai a series of leading questions regarding grounds for divorce, division of marital assets, and allocation of parenting rights and parenting time, to which Rai answered "correct" each time. However, the default allocation judgment gave Parmar significantly less parenting time than Dr. Amabile recommended. Although Rai did not introduce Dr. Amabile's report as evidence in the prove-up hearing, an excerpt of the report was attached to Parmar's reply which documents Dr. Amabile's recommendation that, in addition to every

other weekend, Parmar have parenting time every Tuesday and Wednesday evening. However, the default allocation judgment submitted by Rai and approved by the circuit court did not provide Parmar with Wednesday evening parenting time. In addition, the default allocation judgment did not provide Parmar with overnights with the children every Tuesday during the summer months, as Dr. Amabile recommended in her report. The default allocation judgment did not "follow pretty closely" Dr. Amabile's recommendations in her report regarding parenting time, and Rai and her counsel's statement that it did was likely misleading. Indeed, the circuit court appeared to have been led astray when it stated that the default allocation judgment "*mirrors* the recommendations contained within the report of Dr. Amabile." (emphasis added). Clearly, it did not.

¶ 45     The circuit court is obligated to consider the best interests of the children. See 750 ILCS 5/602.7(a) (West 2016) ("The court shall allocate parenting time according to the child's best interests"); *In re Haley D.,* 2011 IL 110886, ¶ 90 ("courts must always remain mindful of the best interests of minor children"); *Carroll v. Carroll,* 64 Ill. App. 3d 925, 929 (1978) ("The standard against which all actions must be measured in all custody cases, both by the trial court and the appellate court, should be the best interest of the child."). I see no reason why the best interests standard would not apply in the context of a default judgment where the circuit court has before it the recommendations of a professional experienced in matters of parenting time and responsibility. The only reason I can discern for why Parmar was not allocated the parenting time recommended by Dr. Amabile, particularly when almost every interim order in the record reflects that the parties had substantially equal parenting time with their children, was that Parmar was being penalized for his failure appear. Neither Rai nor her counsel pointed out to the circuit court how they were deviating from Dr. Amabile's parenting time recommendations, and

the circuit court's failure to confront these discrepancies or to explain why it had granted Parmar less parenting time than Dr. Amabile recommended when it denied Parmar's motion to vacate was an abuse of its discretion. I note parenthetically that because Dr. Amabile's full report is not in the record (and it is not clear whether it was filed with the circuit court clerk under seal), I am unable to consider whether the default judgment properly considered the best interests of the children as it relates to the provision in the default allocation judgment granting Rai sole decision-making authority as to the minors.

¶ 46     A prove-up hearing should not be a *pro forma* matter when the best interests of minors are at stake. Although a respondent's default may be deemed an admission of the material facts stated in the complaint, this does not mean that a petitioner is entitled to everything she seeks; rather, a trial court has the discretion to require her to present proof of the factual allegations in her complaint. *Universal Casualty Co. v. Lopez*, 376 Ill. App. 3d 459, 464 (2007); 735 ILCS 5/2–1301(d) (West 2008) ("Judgment by default may be entered for want of an appearance, or for failure to plead, but the court may in either case, require proof of the allegations of the pleadings upon which relief is sought."). If the plaintiff fails to meet her burden of proof at a prove-up, the trial court may refuse to enter a default judgement. *Universal Casualty Co.*, 376 Ill. App. 3d at 464. In addition, a default is not deemed an admission of the "conclusions in the complaint." *Id.* at 466. At the very least, the circuit court should not have accepted Rai's proposed allocation judgment without inquiring further about why Parmar should not be granted the amount of parenting time Dr. Amabile recommended.

¶ 47     In denying Parmar's motion to vacate default judgment, the circuit court stated that the case had been pending for a long time, in part due to the Covid-19 pandemic, and that Parmar had been "heard" and "there was litigation on the merits here." I disagree. While there was

substantial activity in this case, one cannot be said to be heard until they have been placed under oath and given evidence to the court. My review of the record does not indicate that evidence was taken from any parties or witnesses, other than Rai's brief testimony at the prove-up hearing. This case appeared to be ready for trial, which would not have taken more than a couple days. As such, Rai would not have been substantially inconvenienced.

¶ 48     Another reason why the circuit court abused its discretion in denying Parmar's motion to vacate default judgment is that this case was transferred to the circuit court's reconciliation calendar on June 11, 2019, and there is nothing in the record to show that it had been returned to the active calendar when default judgment was entered against Parmar. Cook County Circuit Court Rule 13.2(g) states in pertinent part that assignment to the reconciliation calendar shall be made by agreement of the parties, which shall specifically state that "the parties are requesting that proceedings be suspended during the time they are seeking a reconciliation." Rule 13.2(g) further states that "[a]ll cases on the reconciliation calendar shall be called for status within one year, and if the matter has been on the calendar for one year it will be dismissed or returned to the active calendar." Finally, it states in pertinent part that "[u]pon motion of either party, the case shall be removed from the reconciliation calendar and returned to the active calendar," and that "[d]uring the pendency of any case on the reconciliation calendar, all prior orders of court, including access to the court for enforcement and discovery, shall be considered suspended, unless otherwise expressly agreed to by the parties or ordered by the court." Again, there is no order in the record transferring this case back to the circuit court's active calendar, and it is not clear whether Rule 13.2(g) is self-effectuating such that this case would have been automatically returned to the active calendar after one year on the reconciliation calendar or when Rai filed her motion for default judgment. That this case arguably remained on the circuit court's

reconciliation calendar when default judgment was entered informs my view of the circuit court's abuse of discretion in not granting Parmar's motion to vacate the default judgment against him.

¶ 49    Finally, the circuit court had other options available to it to address Parmar's failure to file an appearance. It could have imposed any terms and conditions it deemed "reasonable," 735 ILCS 5/2–1301(e), including conditioning the vacatur of the default judgment upon the payment of attorney fees and costs. See, *e.g.*, *Bachewicz v. American National Bank & Trust Company of Chicago,* 135 Ill. App. 3d 294, 301 (1985) (finding that the court's assessment of attorneys' fees and costs as a condition for vacating the default judgment was a "proper exercise of the court's discretion and within the scope of the authority granted it under Code of Civil Procedure section 2-1301(e)"); *Ward v. Rosenfeld*, 204 Ill. App. 3d 908, 912 (1990) (finding reasonable the court's decision to condition the vacatur of the default judgment on defendant paying the fees and costs incurred by the plaintiff due to defendant's failure to appear in court).

¶ 50    I appreciate the frustration that Rai and the circuit court experienced by Parmar's repeated failures to file an appearance after his counsel withdrew. However, I do not believe substantial justice was done here, and, under the circumstances, believe it would be entirely reasonable to compel Rai to try the case on the merits where the parties and court engaged in substantial pre-trial litigation; the parties were attempting to reconcile and settle their dispute even after Parmar's counsel withdrew; the case arguably remained on the reconciliation calendar when default judgment was entered against Parmar; the default allocation judgment conferred substantially less parenting time to Parmar than was recommended by Dr. Amabile without any reasons given by Rai or explanation by the court; the only matter remaining was for this case to be tried; and there were viable options that the circuit court could have employed that would

have better balanced the dueling interests between timely disposition and determination of the dispute on the merits. In short, I do not view this case as one that merited a last resort default judgment.

¶ 51    Accordingly, I respectfully dissent.